SANTACROCE LAW OFFICES, LTD.
Frederick A. Santacroce, Esq.
Nevada Bar No. 5121
3275 S. Jones Blvd. Ste. 104
Las Vegas, Nevada 89146
Phone:    (702) 749-4594
Facsimile: (702) 543-4855
fasatty@yahoo.com

A.M. SANTOS LAW, CHTD.
Antony M. Santos, Esq.
Nevada Bar No. 11265
3275 S. Jones Blvd. Ste. 104
Las Vegas, Nevada 89146
Phone:    (702) 749-4594
Facsimile: (702) 543-4855
tony@amsantoslaw.com

Attorneys for Plaintiff Nigrelli

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| LISA NIGRELLI, an individual,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>MGM RESORTS INTERNATIONAL; VICTORA PARTNERS d/b/a MONTE CARLO RESORT AND CASINO, as the employer; CULINARY WORKERS UNION, LOCAL 226; and DOES 1-50, inclusive,<br><br>　　　　Defendants. | Case No. 2:15-cv-01840-GMN-NJK<br><br>**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff LISA NIGRELLI ("Plaintiff") hereby complains against defendants MGM RESORTS INTERNATIONAL, VICTORA PARTNERS d/b/a MONTE CARLO RESORT AND CASINO and the CULLINARY WORKERS UNION LOCAL 226 (collectively, "Defendants"), alleging as follows:

### PARTIES, JURISDICTION AND VENUE

1. Plaintiff LISA NIGRELLI is, and at all material times hereto was, a resident of Clark County, Nevada.

2.      On information and belief, the MGM Resorts International ("MGM") is, and at all material times hereto was, a business organization formed and existing under the laws of the State of Delaware. It is registered as a foreign corporation in Nevada, and its principal place of business is located in Clark County, Nevada.

3.      On information and belief, Victoria Partners is Nevada limited partnership formed and existing under the laws of the State of Nevada d/b/a Monte Carlo Resort and Casino ("Monte Carlo") located and operating in Clark County, Nevada.

4.      On information and belief, the Culinary Workers Union Local 226 (the "Union" or "Culinary Union"), is, and at all material times hereto was, an unincorporated association in which employees participate and which exists for the purpose of dealing with employers concerning grievances and terms and conditions of employment. At all times herein relevant the Union represented and now represents employees in industries affecting commerce within the meaning of Section 301(a) of the Labor-Management Relations Act ("LMRA"), 29 U.S.C. Section 185. The Union operates a headquarters in Clark County, Nevada.

5.      The Union is signatory to a collective bargaining agreement that governs the wages, hours and working conditions of employees represented by the Union and working for member signatory contractors in the culinary industry within the jurisdiction of this Court.

6.      Plaintiff does not presently know the true names and capacities of the defendants named herein as Does 1 through 50, inclusive. Plaintiff will seek leave to amend this Complaint to allege said defendants' true names and capacities as soon as they are ascertained. Plaintiff is informed and believe, and on that basis allege, that each of the fictitiously named defendants Does 1 through 50 participated in and is in some manner responsible for the acts alleged in this Complaint and the damages resulting therefrom.

7.      Plaintiff is informed and believes that at all times referenced herein, each Defendant was the agent, employee, partner, co-venturer, successor-in-interest, alter ego, and/or co-conspirator of each and all of the other Defendants and was acting within the course and scope of said agency, employment, partnership, co-venture, relationship and/or conspiracy. Plaintiffs are informed and believe, and on that basis allege, that each Defendant acted in concert with, and

1  with the consent of, each of the other Defendants, and that each Defendant ratified or agreed to
2  accept the benefits of the conduct of each of the other Defendants. Plaintiff is further informed
3  and believe, and on that basis allege, that each Defendant actively and knowingly participated in
4  the furtherance of the wrongful acts alleged herein, directed the wrongful acts alleged herein,
5  benefited from the wrongful acts alleged herein, and/or used the entity defendants in a willful and
6  intentional manner to carry out the wrongful acts alleged herein.

7       8.     Venue is proper in this district under 28 U.S.C. §1391(b)(2) and (3) because a
8  substantial part of the events and omissions giving rise to the claims asserted herein occurred
9  within this judicial district, substantial injury occurred in this district, and Defendants are
10 otherwise subject to the Court's personal jurisdiction in this district.

11      9.     Jurisdiction exists over Defendants because Defendants conduct business in
12 Nevada and in this judicial district, or otherwise avail themselves of the privileges and protections
13 of the laws of the State of Nevada, such that traditional notions of fair play and due process are
14 not offended by this Court's exercise of jurisdiction over Defendants.

## GENERAL ALLEGATIONS

16      10.     At all relevant times, Plaintiff was employed by Monte Carlo Resort and Casino
17 located at 3770 Las Vegas Boulevard South, Las Vegas, Nevada 89109.

18      11.     Plaintiff's employment with the Monte Carlo Resort and Casino commenced 1996.

19      12.     Plaintiff was hired as a cocktail server in the black jack gaming area(s).

20      13.     During the time frame germane to these claims, there were approximately fifty
21 (50) cocktail servers in the department.

22      14.     Based on seniority Plaintiff was designated as cocktail server number #16. Due
23 to resignations Plaintiff is now #4.

24      15.     Plaintiff's schedule, set based on seniority, was Friday, 7:00 p.m. to 3:00 a.m.;
25 Saturday, 5:00 p.m. to 1:00 a.m.; Sunday, 5:00 p.m. to 1:00 a.m.; Monday and Tuesday, 5:00
26 p.m. to 1:00 a.m.; and off on Wednesday and Thursday.

27      16.     A new schedule was proposed by Beverage Manager Phillip Dow in January
28 2015.

17. As a result of the new schedule, Plaintiff's schedule changed on Monday and Tuesday to 7:00 p.m. to 3:00 a.m. This was an issue for Plaintiff.

18. The Director of Beverage Nick Kabetso ("Director Kabesto") changed the schedules in or about February 2015.

19. In fact, Director Kabesto held a meeting for all employees in the Beverage department on or about February 19, 2015.

20. There were approximately 50 employees in the Beverage department.

21. The purpose of the meeting was to go over the floor 10 schedule for the cocktail servers.

22. Plaintiff is not aware of why they wanted to change the schedule, but employees were told that management wanted to get things in line for the new arena opening which was scheduled to open in April of 2016.

23. Plaintiff's union, the Culinary Workers Union Local 226 was also a part of the meeting.

24. Department Head Johanna Dalton and other Union representatives represented Plaintiff and others members at the meeting.

25. Beverage Manager Dow represented the employer (Defendant Victoria Partners d/b/a Monte Carlo).

26. Department Head Dalton started the meeting by telling Union members that they were going over the schedule and needed input to determine what was wrong with the schedule.

27. Department Head Dalton suggested at the meeting that Beverage Manager Dow did not go by the contract which eliminated 16 shifts and added shifts for members to bid on.

28. In addition, he changed shifts to three hours instead of two hours.

29. By way of example, Plaintiff's regular shift schedule was 5:00 p.m. to 1:00 a.m. but he changed it to 8:00 p.m. to 4:00 a.m. which constituted a violation of the contract.

30. Department Head Dalton asked Plaintiff and other members for insight and input.

31. Members reviewed everyone's schedule and stayed at said meeting for a couple of hours.

32. Once they reviewed everyone's schedule, Department Head Dalton represented that she was going to present it to Beverage Manager Dow the next day.

33. He had already left the meeting before we finished reviewing everyone's schedule.

34. After the meeting, Plaintiff's schedule was returned to Friday, 7:00 p.m. to 3:00 a.m.; Saturday, 5:00 p.m. to 1:00 a.m.; Sunday, 5:00 p.m. to 1:00 a.m.; Monday and Tuesday, 5:00 p.m. to 1:00 a.m.; and off on Wednesday and Thursday.

35. However, sometime after the meeting, a memo changing the schedules was distributed and Plaintiff's schedule was again changed on Monday and Tuesday to 7:00 p.m. to 3:00 a.m. This was an issue for Plaintiff.

36. There were a total of eight meetings from January 8, 2015 through April 8, 2015 on this matter.

37. On Wednesday, April 8, 2015, there was a final meeting regarding the schedule.

38. Organizers Samson Edea ("Edea") and Leonel Batres ("Batres") represented the Union members.

39. Department Head Dalton was not present at this meeting.

40. Plaintiff and her coworkers Lucy Martinez and Angela Cooper were present and Director Kabetso and Human Resources Representative Casey Dake ("HR Rep. Dake") were present on behalf of the employer.

41. Inexplicably, Plaintiff was somehow scheduled from 7:00 p.m. to 3:00 a.m.

42. This was entirely unacceptable to Plaintiff.

43. Plaintiff had repeatedly advised her superiors and Union representatives to keep her at 5:00 p.m. to 1:00 a.m.

44. Plaintiff politely contested.

45. Notwithstanding, Union organizers Edea and Batres did not address the issue.

46. The meeting ended without a resolution for Plaintiff.

47. Plaintiff is still fighting for her schedule to be changed to 5:00 p.m. to 1:00 a.m.

48. After the final meeting on April 8, 2015, organizers Edea and Batres said that they wanted to talk with Plaintiff.

49. Plaintiff assumed it was about the schedule issue.

50. Plaintiff met with Union organizers Edea and Batres in the employee's dining room.

51. At said meeting, quite inexplicably, they asked Plaintiff if she frequents Station Casinos.

52. She said yes. They said that they were given a video of Plaintiff's husband who is not employed by Station Casinos or the Monte Carlo or MGM properties.

53. Plaintiff asked Organizers Edea and Batres who sent them the video.

54. Edea and Batres refused to tell her. Instead they told Plaintiff that as she (Plaintiff) is a Union member and as he is the indirect beneficiary of some of her Union benefits, he should not be going to Station Casinos (Station Casinos is non-union).

55. Plaintiff assumed that this was an overt threat to her and her Union membership as well as her health insurance benefits because her husband had cancer ostensibly covered by medical benefits Plaintiff enjoys as a Union member.

56. Neither Edea nor Batres mentioned anything about Plaintiff's schedule. Plaintiff mentioned her schedule and Edea and Batres brushed off the subject by stating that they would speak with Department Head Dalton. That was the extent of the meeting.

57. Edea had participated in all eight or more meetings and Batres participated in three meetings. Both were well aware of Plaintiff's issues with the scheduling and the apparent breach of rules regulations and protocols as promulgated under the collective bargaining agreement.

58. On Tuesday, April 14, 2015, Plaintiff filed a grievance with the Union disputing her work hours and the failure to abide by the seniority protocols as called for under Article 20 of the collective bargaining agreement.

59. The grievance was assigned to Grievance Specialist Ester Dyer ("GS Dyer").

60. GS Dyer was not a part of the initial meetings so she did not have any knowledge of the changes in the schedules that took place sometime in January 2015.

61. On Thursday, April 30, 2015, Plaintiff participated in an Internal Resolution process with Director Kabesto and Shop Steward Pam Parra as called for under the Agreement.

62. They were unable to come to a resolution therefore the grievance moved to the next step of the grievance process.

63. On Monday, May 18, 2015, Plaintiff received a telephone call from GS Dyer asking her about her grievance and telling her that she thought she could resolve it without going to a Board of Adjustment.

64. Several days later, Plaintiff received a telephone call from the Union informing her that GS Dyer was unable to resolve her grievance therefore it had to go to the Board of Adjustment.

65. On Thursday, May 21, 2015, Plaintiff sat before the Board of Adjustment meeting in the Human Resources department at or around 11:00 a.m.

66. GS Dyer, Director Kabesto, and HR Rep. Dake were present.

67. The purpose of the meeting was to discuss Plaintiff's grievance regarding her schedule.

68. Director Kabesto admitted that he covered all names up and did not do the schedule according to seniority in a manner satisfying the rules regulations and protocols as promulgated Article 20 of the Agreement.

69. GS Dyer asked if it was possible to change Plaintiff's schedule back to the original 5:00 p.m. to 1:00 a.m.

70. Director Kabesto represented that it was.

71. That ended the meeting and they said they would get back to Plaintiff.

72. GS Dyer also said she would get back to Plaintiff.

73. On Thursday, May 28, 2015, Plaintiff called and left a message on GS Dyer's voicemail inquiring about the status of her grievance.

74. On Friday, June 5, 2015, Plaintiff called and spoke with GS Dyer. GS Dyer told Plaintiff that she was still working on her grievance. GS Dyer also told her that she needed to talk with Department Head Dolton and that she would get back to Plaintiff.

75. On Monday, June 22, 2015, Plaintiff called GS Dyer again but learned that she was on vacation until June 29, 2015.

76. On Monday, June 29, 2015, Plaintiff called GS Dyer and left a message and also called on July 1, 2015, July 6, 2015, and July 8, 2015.

77. In frustration Plaintiff also called Norbert Kubiak (GS Dyer's superior) and left a message as she was unable to speak with anyone.

78. Plaintiff continued to leave messages on July 10, and 13, 2015.

79. Plaintiff also requested a meeting to talk with President Ted Pappageorge.

80. Later that day, on July 13, 2015, GS Dyer finally called Plaintiff around 6:20 p.m. GS Dyer informed Plaintiff that she told MGM to change Plaintiff's hours back to her original schedule of 5:00 pm – 1:00 a.m.

81. Plaintiff inquired when might she know of the decision to which GS Dyer responded "when the schedule changes."

82. The schedules are posted every week. The schedule changes went into effect on April 13, 2015.

83. To date, both the Union and the Employer refuse to oblige the seniority protocols germane to the scheduling issues and refuse to accommodate Plaintiff.

84. The Union has violated its duty of fair representation by representing Plaintiff and failing to resolve her grievance in a manner comporting with the collective bargaining agreement.

85. GS Dyer has not thoroughly investigated Plaintiff's grievance, but allowed it to be unresolved since April 14, 2015.

86. The Union organizers have attempted to threaten Plaintiff regarding her husband, her benefits, and membership in a blatant effort to strong arm Plaintiff in letting this matter subside without complaint.

87.    Plaintiff merely seeks to work her bidded shift which is 5:00 p.m. to 1:00 a.m. on Monday and Tuesday, and that the policies and procedures and the seniority protocols as mandated (including but not limited to Article 20 of the collective bargaining agreement) are enforced.

### FIRST CAUSE OF ACTION

### (BREACH OF CONTRACT – All Parties)

88.    Plaintiff incorporates by this reference each and every allegation set forth in the preceding paragraphs of this Complaint, as if fully set forth herein.

89.    Defendants, breached the contract, the Collective Bargaining Agreement, by failing to implement the seniority protocols as mandated therein including the provisions of Article 20 thereof, and by arbitrarily changing Plaintiff schedule to her considerable detriment.

90.    Defendant Culinary Workers Union further breached the contract by failing to properly represent Plaintiff and her interests as to her employment with employer.

91.    Defendants' actions were the direct and proximate cause of Plaintiff's injuries.

92.    Due to the Defendants' conduct, the Plaintiff was forced to retain the services of an attorney in order to prosecute this action, and therefore is entitled to an award of reasonable attorneys' fees and costs of suit incurred herein.

### SECOND CAUSE OF ACTION

### (BREACH OF DUTY OF FAIR REPRESENTATION – Culinary Union Local 226)

93.    Plaintiff incorporates by this reference each and every allegation set forth in the preceding paragraphs of this Complaint, as if fully set forth herein.

94.    Plaintiff avers that the Union, as exclusive bargaining agent, by its actions and inactions breached its fiduciary duty and its duty of fair representation to Plaintiff in violation of Section 8 of the National Labor Relations Act, 29 U.S.C. § 158(b)

95.    Defendant, the Union, breached its duty of due of fair representation by, inter alia, not properly representing Plaintiff with respect to this scheduling matter. They did so by failing to comply with the seniority rules and protocols as mandated by the Agreement.

96.    Defendant, the Union, breached its duty of fair representation by, inter alia, not

properly advising Plaintiff of all of her legal rights and remedies and failing to inform Employer of her seniority privileges as to the scheduling issue. Due to Defendant's arbitrary and capricious actions in violation of the Agreement and seniority protocols, they have not represented Plaintiff fairly.

97. As an actual and proximate cause of the Defendant's conduct described herein, Plaintiff has been injured resulting in financial loss to her.

98. Due to the Defendants' conduct, Plaintiff was forced to retain the services of an attorney in order to prosecute this action, and therefore is entitled to an award of reasonable attorneys' fees and costs of suit incurred herein.

## THIRD CAUSE OF ACTION

### (DECLARATORY RELIEF – All Parties)

99. Plaintiff incorporates by this reference each and every allegation set forth in the preceding paragraphs of this Complaint, as if fully set forth herein.

100. An actual controversy has arisen and now exists between the parties with respect to the alleged violation of the collective bargaining agreement. Plaintiff alleges that the change to her schedule is a direct violation of the Collective Bargaining Agreement based upon her seniority. Upon information and belief Defendants content this argument.

101. Plaintiff seeks reinstatement of her prior schedule in a manner complying with the relative provisions of the Collective Bargaining Agreement.

102. As an actual and proximate cause of the Defendants' conduct described herein, Plaintiff has been injured resulting in financial loss to her.

103. Due to the Defendants' conduct, Plaintiff was forced to retain the services of an attorney in order to prosecute this action, and therefore is entitled to an award of reasonable attorneys' fees and costs of suit incurred herein.

///

///

///

///

## PRAYER FOR JUDGMENT

WHEREFORE, Plaintiffs prays that this Court grant it the following relief:

1. For relief as the Court may deem just and proper.
2. For all costs and all attorneys' fees incurred and accrued in these proceedings.

Dated this 5 day of October, 2015.

SANTACROCE LAW OFFICES, LTD.
Frederick A. Santacroce, Esq.
Nevada Bar No. 5121
3275 S. Jones Blvd. Ste. 104
Las Vegas, Nevada 89146
Phone: (702) 749-4594
Facsimile: (702) 543-4855
fasatty@yahoo.com

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial on all claims so triable in this action.

Dated this 5 day of October, 2015.

SANTACROCE LAW OFFICES, LTD.
Frederick A. Santacroce, Esq.
Nevada Bar No. 5121
3275 S. Jones Blvd. Ste. 104
Las Vegas, Nevada 89146