1
2
3
4
5
6
7

Kristin L. Martin (Nevada Bar No. 7807)
Sarah Varela (Nevada Bar No. 12886)
McCRACKEN, STEMERMAN & HOLSBERRY
1630 Commerce Street, Suite A-1
Las Vegas, Nevada 89102
Tel:    (702) 386-5107
Fax:    (702) 386-9848
Email: klm@dcbsf.com
          svarela@dcbsf.com
*Attorneys for Defendants Culinary Workers Union Local 226*

8
9
10

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

11
12
13
14
15
16
17
18

| | |
|---|---|
| LISA NIGRELLI, an individual,<br><br>                    Plaintiff,<br><br>          vs.<br><br>VICTORIA PARTNERS d/b/a MONTE CARLO RESORT AND CASINO, as the employer; CULINARY WORKERS UNION, LOCAL 226; and DOES 1-50, inclusive,<br><br>                    Defendants. | CASE NO. 2:15-cv-01840-GMN-NJK<br><br>**DEFENDANT CULINARY WORKERS UNION LOCAL 226'S MOTION FOR SUMMARY JUDGMENT** |

19
20
21
22
23

        Pursuant to Federal Rule of Civil Procedure 56, Defendant Culinary Workers Union Local 226 moves for an order granting summary judgment on all causes of action in Plaintiff's First Amended Complaint against Local 226.  This motion is based on the attached memorandum of law and the Affidavits of Johanna Dalton, Esther Dyer, Richard McCracken, Samson Edea and Kristin Martin.

24
25
26
27
28

Dated: June 10, 2016                              McCRACKEN, STEMERMAN & HOLSBERRY


                                                   */s/ Kristin L. Martin*
                                                  Kristin L. Martin
                                                  Sarah Varela

                                                  *Attorneys for Defendant Culinary Workers Union Local 226*

1

**MEMORANDUM OF LAW IN SUPPORT OF CULINARY WORKERS UNION
LOCAL 226'S MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

Plaintiff Lisa Nigrelli has brought this case against her employer (Monte Carlo Resort and Casino) and union (Culinary Workers Union Local 226) because Monte Carlo changed the time that she starts work two days each week from 5 p.m. to 7 p.m.  To prevail, Nigrelli must prove both that Monte Carlo breached its collective bargaining agreement with Local 226, and that Local 226's representation of Nigrelli was arbitrary, discriminatory or in bad faith.  Nigrelli cannot do either, and no disputed issues of fact preclude summary judgment.  It is undisputed that nothing in the collective bargaining agreement gives Nigrelli a right to work the hours that she wants.  It is also undisputed that Local 226 advocated for Nigrelli, repeatedly asking Monte Carlo to give Nigrelli the hours that she wanted.  When that advocacy was unsuccessful, Local 226 decided not to submit Nigrelli's grievance to arbitration because its counsel advised that Local 226 would not prevail.  Summary judgment should be granted for Local 226 on all claims.

**STATEMENT OF MATERIAL FACTS NOT GENUINELY IN DISPUTE**

Pursuant to Rule 56-1 of the Local Rules of this Court, Local 226 provides this Statement of Material Facts Not Genuinely in Issue.[1]

---

[1]   This Statement of Material Facts cites evidence from the following sources: the Affidavits of Johanna Dalton, Esther Dyer, Richard McCracken, Samson Edea and Kristin Martin; deposition testimony of Lisa Nigrelli and Nicholas Kabetso; and the First Amended Complaint.  The First Amended Complaint is attached as Exhibit A to the Affidavit of Kristin

## A. Background

1. Nigrelli has been employed as a cocktail server at Monte Carlo since approximately 1996. First Amended Complaint ("FAC"), ¶¶ 10-12; Nigrelli Dep. 50:7-18.

2. Local 226 represents cocktail servers at the Monte Carlo, including Nigrelli, for the purpose of collective bargaining. Nigrelli Dep. 52:14-17; Dyer Aff., ¶ 3.

3. Monte Carlo and Local 226 entered into a Collective Bargaining Agreement for the period June 1, 2013 to May 31, 2018 that covers Nigrelli's employment. Nigrelli Dep. 25:24-26-5 and Exh. 2; Dyer Aff., ¶ 5, Exh. A.

4. Article 20 of the Collective Bargaining Agreement is entitled "Seniority." Article 20.04(b) explains when employees have a right to work a particular shift or stations. It provides:

> (b)   When there is a permanent vacancy, or a temporary vacancy of at least ninety (90) days, on a particular shift or station, employees in the same job classification on other shifts or stations who desire to transfer to the vacancy will be transferred on the basis of their classification seniority, provided that the senior employee desiring transfer is qualified to perform satisfactorily the work on the shift and/or station applied for and that a qualified employee is available to replace the employee desiring to transfer. An employee transferred under this Section shall assume the weekly schedule of days of work and days off, and the daily shift scheduled, applicable to the vacant position to which he/she transfers, and the employee shall not be eligible for another transfer under this Section for six (6) months. An employee transferred under this Section who cannot perform satisfactorily the work on the shift or station to which transferred shall be transferred back to his/her former shift and/or station within thirty (30) shifts worked from the date of transfer. The resulting vacancy or vacancies created by a

---

Martin; the Nigrelli deposition transcript pages and exhibits are attached as Exhibits B to L to the Affidavit of Kristin Martin; and the Kabetso deposition transcript and exhibits are attached as Exhibits M to P to the Affidavit of Kristin Martin.

transfer under this Section shall be filled by the next senior qualified employee(s) from another shift and/or station who desires to work on the shift or station where the vacancy exists.  Permanent vacancies under this paragraph shall be posted for seventy-two (72) hours in the department where the vacancy exists.  The Employer may fill the vacancy temporarily during the posting period.

Dyer Aff., ¶ 5, Exh. A, at 53.

5.      The term "shift" in Article 20.04(b) means the days of the week and the hours that an employee works.  The term "station" in Article 20.04(b) means the location that an employee works.  Kabetso Dep. 26:13-17; Dyer Aff., ¶ 7.

6.      The longstanding practice at the Monte Carlo (and at many other Strip casinos where Local 226 represents the cocktail servers) is that management creates a schedule of shifts and stations.  For example, a shift and station might be Monday to Friday, 9 a.m. to 5 p.m. in a certain section of the casino floor.  When a shift and station become vacant, cocktail servers can bid to work the vacant shift and station.  Cocktail servers cannot bid for the shift separately from the station, or vice versa.  Article 20.04(b) requires the Monte Carlo to assign the shift and station to the cocktail server who has the most seniority in the cocktail server classification who bid for the shift and station.  Dyer Aff., ¶¶ 8-9.

7.      Article 23.01 of the Collective Bargaining Agreement recognizes Monte Carlo's "right" to make "scheduling" decisions, and states, "Seniority, among other factors, will be considered by the employer when making these decisions."  Nigrelli Dep. 25:24-26-5 and Exh. 2, at 61; Dyer Aff., ¶ 3 and Exh. A, at 61.

8.      A rule that Local 226 has followed for many decades is known as the "two-hour rule."  The "two-hour rule" provides that management may change the starting and ending time

of an employee's shift by two hours in either direction without creating a new shift.  Nigrelli Dep. 92:16-93:7, 97:17-19; Dyer Aff., ¶ 10; Dalton Aff., ¶ 6; McCracken Aff., ¶ 7.

9.     Articles 20.04(b) and 23.01 are the only provisions of the Collective Bargaining Agreement that are relevant to Nigrelli's complaint.  Nigrelli Dep. 25:24-26:5 and Exh. 2; Dyer Aff., ¶ 3 and Exh. A.

10.     Article 21 of the Collective Bargaining Agreement establishes the grievance procedure.  With respect to grievances that do not challenge employee discipline, the first step of the grievance process is an informal discussion between the employee and her immediate supervisor; the second step of the grievance process is a Board of Adjustment meeting; and the third step of the grievance procedure is arbitration.  Dyer Aff., ¶¶ 3, 11 and Exh. A, at 54-60.

11.     There are no written agreements, apart from the Collective Bargaining Agreement, between Local 226 and the Monte Carlo that are relevant to this case.  Nigrelli Dep. 189:1-190:16.

**B.     The Monte Carlo decided to change the cocktail servers' schedules.**

12.     In later 2014 or early 2015[2], Monte Carlo decided to make changes to the cocktail servers' schedules so that staffing levels would better match business demand.  Kabetso Dep., 16:2-20, 21:10-21, 30:21-31:10.

13.     Local 226 assigned Organizing Director Johanna Dalton to represent the Monte Carlo cocktail servers in connection with the proposed schedule changes.  Dalton Aff., ¶ 5.

14.     In approximately January, Monte Carlo's Beverage Manager Phillip Dow

---

[2]     Unless otherwise indicated, all dates are in 2015.

proposed a new schedule for cocktail servers.  The proposed schedule changed the hours of

approximately 16 to 18 cocktail servers' shifts by more than two hours.  Under the two-hour

rule, the schedule changes that Mr. Dow proposed would have been eliminated those shifts, and

created new shifts.  This would have meant that all of the cocktail servers (not just the 16 to 18

whose shifts were eliminated) could bid for the new shifts and stations, and the most senior

cocktail server who bid for each shift and station would be assigned to it.  FAC, ¶ 16; Nigrelli

Dep. 86:1-10, 98:11-99:3, 95:18-96:14, 97:20-98:1 and Exh. 7; Kabetso Dep. 20:18-21:9,

21:23-22:9; Dalton Aff., ¶ 6.

15.    Nigrelli's shift was one of the approximately 16 to 18 shifts that Dow proposed to

eliminate.  On the schedule that Dow proposed, Nigrelli's hours on Monday and Tuesday were

changed from 5 p.m.-1 a.m. to 8 p.m.-4 a.m.  FAC, ¶ 17; Nigrelli Dep. 86:1-10, 99:23-100:12

and Exh. 7; Dalton Aff., ¶ 7.

16.    Between approximately January 8 and April 8, Dalton held approximately eight

meetings with Monte Carlo cocktail servers and management at which changes to cocktail

servers' schedules were discussed.  In some of the meetings, Dalton met privately with cocktail

servers.  In other meetings, Dalton and the cocktail servers met with Dow, Kabetso and/or other

Monte Carlo management.  Nigrelli participated in most or all of the meetings.  FAC, ¶¶ 19, 21,

23-32, 36; Nigrelli Dep. 87:2-13, 89:16-90:23; Kabetso Dep. 43:13-18; Dalton Aff., ¶ 8.

17.    Dalton sought to persuade the Monte Carlo to make fewer changes to the cocktail

servers' schedules than Dow had originally proposed.  Nigrelli Dep. 89:16-90:23, 93:24-94:12,

94:23-97:9; Dalton Aff., ¶ 9.

18.    The Monte Carlo had to the right under the Collective Bargaining Agreement to

make the changes that Phillip Dow proposed, but the changes would have been very disruptive to many employees.  Kabetso Dep. 21:23-22:9, 23:12-24:23, 34:24-35:8; Dalton Aff., ¶ 10.

19.     In about February, Monte Carlo Director of Beverage Nicholas Kabetso agreed not to implement the schedule changes that Dow had proposed.  Instead, Kabetso proposed a new set of changes instead.  The new proposal changed most cocktail servers' hours by no more than two hours, so under the two-hour rule, the shifts would not be eliminated.  Kabetso Dep. 21:23-22:24, 37:21-23, 38:16-39:1 and Exh. 3; Dalton Aff., ¶ 11.

20.     After Kabetso made the revised schedule, Dalton continued to work with the cocktail servers to adjust the schedule changes so that senior cocktail servers' preferences were taken into account.  Monte Carlo is allowed to adjust schedules under the two-hour rule without regard to seniority, but Dalton urged Kabetso to take seniority into account as much as possible.  Nigrelli Dep. 94:23-95:1, 110:1-13, 114:3-23, 130:11-16; Kabetso Dep. 41:8-14, 42:20-43:12, 84:20-85:1; Dalton Aff., ¶ 12.

21.     Monte Carlo implemented the schedule changes on approximately April 13.  FAC, ¶ 82; Nigrelli Dep. 94:7-12; Kabetso Dep. 92:6-13.

**C.     The Monte Carlo changed Lisa Nigrelli's hours, but did not change her shift or station.**

22.     As of April 13, Nigrelli was number four in seniority among the cocktail servers at Monte Carlo.  FAC, ¶14.

/ / /

/ / /

23.     In approximately 1999, Nigrelli bid for and won the following shift and station:

| Days | Friday | Saturday | Sunday | Monday | Tuesday |
|------|--------|----------|--------|--------|---------|
| Hours | 7 pm to 3 am | 5 pm to 1 am | 5 pm to 1 am | 5 pm to 1 am | 5 pm to 1 am |
| Location | Pit 9 | Pit 2 | Pit 2 | Pit 3 | Pit 3 |

FAC, ¶ 15; Nigrelli Dep. 62:7-63:21 and Exh. 5.

24.     When the new schedules were implemented on about April 13, Nigrelli was still working the shift and station she bid for and won in 1999.  On April 13, Nigrelli's schedule was changed to the following:

| Days | Friday | Saturday | Sunday | Monday | Tuesday |
|------|--------|----------|--------|--------|---------|
| Hours | 7 pm to 3 am | 5 pm to 1 am | 5 pm to 1 am | 7 pm to 3 am | 7 pm to 3 am |
| Location | Pit 9 | Pit 2 | Pit 2 | Pit 3 | Pit 3 |

Nigrelli Dep. 61:11-62:6.

25.     The change to Nigrelli's schedule on Monday and Tuesday was within the two-hour rule so the change did not eliminate her shift.  Dyer Aff., ¶ 10.

26.     Nigrelli's sole complaint in this lawsuit is the two-hour change to her start time on Monday and Tuesday.  Nigrelli Dep. 62:3-6.

27.     Cocktail server Dana Wagner has less seniority than Nigrelli.  Nigrelli Dep. 118:17-19; Kabetso Dep. 66:4-17.

28.     Before April 13, Wagner worked in Pit 1 on Mondays and Tuesdays from 5 p.m. to 1 a.m.  Wagner continued to work that schedule in Pit 1 after April 13.  Nigrelli Dep.

118:25-119:8; Kabetso Dep. 67:5-9.

29.     Nigrelli contends that because she has more seniority than Wagner, Nigrelli's hours on Mondays and Tuesdays should have remained from 5 p.m. to 1 a.m.; and Wagner's hours on Mondays and Tuesdays should have changed to 7 p.m. to 3 a.m.  Nigrelli Dep. 184:2-14.

30.     Dalton tried to persuade Monte Carlo to make the change that Nigrelli wanted but Monte Carlo declined.  Dalton Aff., ¶ 12.

31.     Monte Carlo decided to change the hours of the Pit 3 shift to 7 p.m. to 3 a.m. each day of the week, and not to change the hours of the Pit 1 shift from 5 p.m. to 1 a.m. each day of the week.  Monte Carlo's reason for changing the hours of the Pit 3 shift was because the cocktail server who worked in Pit 1 on Wednesday to Sunday had more seniority than the cocktail server who worked in Pit 3 on Wednesday to Sunday.  Monte Carlo changed the hours of the Pit 3 shift on Mondays and Tuesdays when Nigrelli worked there, even though Nigrelli had more seniority than Wagner, who worked in Pit 1, because Monte Carlo's practice, whenever possible, is to keep the hours that a station is open consistent all days of the week. Kabetso Dep. 52:1-53:14, 68:2-69:16, 72:19-73:3, 80:9-82:4, 86:18-25 and Exhs. 4, 11; Nigrelli Dep. 136:15-137:4, 153:17-154:1, 182:4-20, 296:7-297:10 and Exh. 26.

**D.    Local 226 dismissed Lisa Nigrelli's grievance because the Monte Carlo did not violate the Collective Bargaining Agreement.**

32.     On about April 14, Nigrelli filed a grievance with Local 226 in which she challenged the change in her hours on Mondays and Tuesdays.  Nigrelli based her grievance on Article 20 of the Collective Bargaining Agreement.  FAC, ¶ 58; Nigrelli Dep. 191:7-20 and

*Nigrelli v. Victoria Partners, et al.*                                           2:15-cv-01840-GMN-NJK
Local 226's Motion for Summary Judgment

Exh. 10; Dyer Aff., ¶ 12.

33.     Nigrelli's grievance was assigned to Local 226 Grievance Specialist Esther Dyer. FAC, ¶ 59; Dyer Aff., ¶ 12.

34.     Dyer has been a Grievance Specialist with Local 226 since approximately August 1998.   Dyer Aff., ¶ 2.

35.     Dyer's duties as a Grievance Specialist are to process grievances that employees file with Local 226, attempt to resolve the grievances with management, and if unsuccessful at resolving a grievance, decide whether to submit the grievance to arbitration.   Dyer Aff., ¶ 3.

36.     When Nigrelli filed her grievance, she was given an informational handout entitled "The Grievance Procedure," which describes Local 226's policies for processing grievances.   Nigrelli Dep. 192:4-12 and Exh. 11; Dyer Aff., ¶ 13 and Exh. B.

37.     Local 226's policy is to arbitrate grievances only if it believes that it is likely to prevail in the arbitration.   Dyer Aff., ¶ 13.

38.     Dyer processed Nigrelli's grievance according to Local 226's normal procedures. Dyer Aff., ¶ 14.

39.     When Dyer received Nigrelli's grievance, Dyer did not know about the schedule changes that Monte Carlo had implemented on about April 13.   FAC, ¶ 60.

40.     The first step of the grievance process entails a meeting between the employee, a Local 226 shop steward, and a manager, which is known as "Step One" or an Internal Review Process meeting.   Dyer Aff., ¶ 14.

41.     On about April 30, Nigrelli, Local 226 shop steward Pam Parra and Nicholas Kabetso held an Internal Review Process meeting.   Parra and Nigrelli were unsuccessful at

10

resolving Nigrelli's grievance because Monte Carlo refused to change Nigrelli's hours.  FAC, ¶¶ 61-62; Nigrelli Dep. 192:13-194:4, 195:1-196:21 and Exh. 13; Kabetso Dep. 79:5-13.

42.    Next, Dyer attempted to resolve Nigrelli's grievance with Monte Carlo's human resources staff, but Dyer was unsuccessful.  FAC, ¶¶ 63-64; Dyer Aff., ¶ 15.

43.    The second step of the grievance process is a Board of Adjustment meeting.  Dyer Aff., ¶ 14.

44.    On May 21, a Board of Adjustment meeting was held about Nigrelli's grievance.  Dyer represented Nigrelli in the Board of Adjustment.  Monte Carlo was represented by a human resources employee named Casey Dake.  Kabetso was also present.  Dyer asked Kabetso if it was possible to change Nigrelli's schedule on Mondays and Tuesdays back to 5 p.m. to 1 a.m., as Nigrelli wanted.  Kabetso said that it was possible.  Dyer asked Monte Carlo's representatives to make the change that Nigrelli wanted.  Monte Carlo's representatives did not agree to do so.  FAC, ¶¶ 65-71; Nigrelli Dep. 196:22-201:3; Dyer Aff., ¶¶ 16-17.

45.    Following the Board of Adjustment meeting, Dyer again asked Dake to change Nigrelli's schedule on Mondays and Tuesdays back to 5 p.m. to 1 a.m., as Nigrelli wanted.  Monte Carlo declined to do so.  FAC, ¶¶ 80, 83; Nigrelli Dep. 203:24-204:10; Dyer Aff., ¶ 18.

46.    In about August, Dyer sought advice from Local 226's counsel Richard McCracken about Nigrelli's grievance.  McCracken advised Dyer that Nigrelli's grievance did not have any merit.  Dyer Aff., ¶ 19; McCracken Aff., ¶¶ 6-8.

47.    Local 226 dismissed Nigrelli's grievance without submitting it to arbitration.  Dyer Aff., ¶ 20; Nigrelli Dep. 205:15-17, 207:16-25 and Exh. 14.

48.    Dyer made the decision to dismiss Nigrelli's grievance without submitting it to

arbitration because Local 226's counsel advised Dyer that the grievance did not have merit. Dyer Aff., ¶ 20.

**E.     Nigrelli's husband's patronage of Station Casinos played no role in Local 226's decision to dismiss Nigrelli's grievance.**

49.     Local 226 is attempting to unionize employees of Station Casinos.  As part of that effort, Local 226 has called for a boycott of Station Casinos.  Nigrelli Dep. 171:20-172:3; Edea Aff., ¶ 3.

50.     Local 226 has assigned its organizers to educate union members about the boycott, including how they would benefit from it, and encourage union members to respect its boycott of Station Casinos.  Edea Aff., ¶ 3.

51.     In April, Samson Edea was employed as an organizer by Local 226.  A Monte Carlo cocktail server informed Edea that there was a promotional video on YouTube that indicated that Nigrelli's husband was a customer of Station Casinos.  Edea Aff., ¶ 4.

52.     On about April 8, Edea, along with Leo Batres, met with Nigrelli in the Monte Carlo's employee cafeteria.  Edea and Batres asked if Nigrelli and her husband went to Station Casinos.  Nigrelli said, "yes."  Edea and Batres said, "Well, you know that your husband gets his health benefits from us."  Nigrelli asked if they were threatening her.  Edea and Batres said that they were not and that they would never threaten her.  Edea and Batres then mentioned the promotional video involving Nigrelli's husband.  FAC, ¶¶ 48, 50-54; Nigrelli Dep. 162:13-163:116; Edea, ¶ 5.

53.     Nigrelli understood that Local 226 is trying the organize the Station Casinos employees into the union because Local 226 believes that if Station Casinos remains nonunion

will drag down the wage and benefit standard at Strip casinos such as the Monte Carlo. Nigrelli Dep. 172:4-10; Edea, ¶ 5.

54.     Neither Edea nor Batres raised their voices or physically intimidated Nigrelli in any way when they met with Nigrelli in the employee cafeteria on about April 8.  Nigrelli Dep. 170:5-171:3.

55.     Neither Edea nor Batres said anything about Nigrelli's schedule when they met with Nigrelli in the employee cafeteria on about April 8.  FAC, ¶ 56; Edea Aff., ¶ 5.

56.     Neither Edea nor Batres played any role in Dyer's decision whether to submit Nigrelli's grievance to arbitration.  Dyer Aff., ¶ 21.

57.     Neither Edea nor Batres told Dalton, Dyer or McCracken about their conversation with Nigrelli in the employee cafeteria, about the YouTube video of Nigrelli's husband, or that Nigrelli's husband patronized Station Casinos.  Edea Aff., ¶ 6; Dalton Aff., ¶ 14; Dyer Aff., ¶ 22; McCracken Aff., ¶ 9.

**F.     The NLRB dismissed Lisa Nigrelli's unfair labor practice charge because Local 226 did not violate its duty of fair representation.**

58.     Nigrelli filed an unfair labor practice charge with the National Labor Relations Board against Local 226.  That unfair labor practice charge was based on the same conduct that forms the basis for this lawsuit.  Nigrelli Dep. 211:10-211:15, 213:7-16

59.     Nigrelli provided an affidavit to the NLRB investigator.  Nigrelli Dep. 213:17-214:21 and Exh. 17.  That affidavit contained the same facts as are alleged in the First Amended Complaint.  *Compare* FAC, ¶¶ 11-87 *with* Nigrelli Dep. Exh. 17.

60.     The NLRB dismissed Nigrelli's unfair labor practice charge because "there is

13

insufficient evidence to establish a violation of the Act."  Nigrelli Dep. 218:7-15 and Exh. 18.

# ARGUMENT

## A.    Summary Judgment Standard

Summary judgment is warranted if "there is no genuine issue as to any material fact and [] the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  After the moving party meets its burden by presenting evidence which, if uncontroverted, would entitle it to a directed verdict at trial, the burden shifts to the nonmoving party to set forth specific facts demonstrating that there is a genuine issue for trial.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 250-51 (1986).  The nonmoving party must show "significant probative evidence tending to support the complaint," *T.W. Elec. Svc., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987); which requires "more than simply show[ing] that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 495 U.S. 574, 586 (1986).

## B.    The First Amended Complaint contains three causes of action, but it is really just a hybrid suit for breach of the Collective Bargaining Agreement by Monte Carlo and breach of the duty of fair representation by Local 226.

An employee may sue her union and her employer in a "hybrid" suit brought under § 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a).[3]  The employee's claim

---

[3]    The First Amended Complaint does not allege any basis for jurisdiction.  That is a separate basis for dismissal because a complaint must allege the basis for the court's jurisdiction.  Fed. R. Civ. P. 8(a)(1); *see also* Local Rule 8-1 ("The first allegation of any complaint, counterclaim, cross-claim, third-party complaint or petition for affirmative relief shall state the statutory or other basis of claimed federal jurisdiction and the facts in support thereof.).  In any event, § 301 is the only apparent basis for jurisdiction.  The federal

against her union is for breach of the duty of fair representation, in violation of § 8(b)(1)(A) of the National Labor Relations Act, 29 U.S.C. § 158(b)(1)(A); and the claim against her employer is for breach of the collective bargaining agreement.  Nigrelli suit is a hybrid suit.

Nigrelli's first cause of action is for breach of the Collective Bargaining Agreement. FAC, ¶¶ 88-92.  Nigrelli alleges that Monte Carlo breached the Collective Bargaining Agreement by failing to implement the seniority provisions when Nigrelli's schedule was changed.  FAC, ¶ 90.[4]  This claim must arise under § 301 because § 301 preempts state-law, contract-breach claims based on a collective bargaining agreement.  *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 413 (1988); *see also Cook v. Lindsay Olive Growers*, 911 F.2d 233, 238-39 (9th Cir. 1990) (state-law claims for breach of the implied covenant of good faith and fair dealing are preempted); *Newberry v. Pacific Racing Ass'n*, 854 F.2d 1142, 1147 (9th Cir. 1988) (same).  The third cause of action is redundant.  It is for declaratory relief, and apparently seeks a declaration that the change to Nigrelli's schedule violated the Collective Bargaining Agreement.

The second cause of action, brought only against Local 226, is for breach of the duty of fair representation.  FAC, ¶¶ 93-98.  Nigrelli also alleges that Local 226 breached the Collective Bargaining Agreement by failing to represent her properly, FAC, ¶ 91; but the

---

Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, does not create federal question jurisdiction. *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950); *Terra Nova Ins. Co., Ltd. v. 900 Bar, Inc.*, 887 F.2d 1213, 1218 n.2 (3d Cir. 1989).

[4]  Nigrelli also alleges that the Local 226 breached the Collective Bargaining Agreement in this way, but Local 226 did not implement the schedule changes.  Monte Carlo did.  SUF, ¶ 21.

*Nigrelli v. Victoria Partners, et al.*                                        2:15-cv-01840-GMN-NJK
Local 226's Motion for Summary Judgment

Collective Bargaining Agreement does not obligate Local 226 to represent Nigrelli. This so-called breach of contract claim is really just a restatement of the duty of fair representation claim. To prevail on her duty of fair representation claim against Local 226, Nigrelli must show *both* that the employer violated the collective bargaining agreement, *DelCostello v. Teamsters*, 462 U.S. 151, 164-65 (1983); *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 570-71 (1976); and that the union violated its duty to represent the employee fairly in the grievance process. *Vaca v. Sipes*, 386 U.S. 171, 190 (1967). This is because these two claims are two claims are "inextricably interdependent." *DelCostello*, 462 U.S. at 164-65. "[A] breach of contract by the employer is a necessary prerequisite to a claim against a union for a breach of the union's duty of fair representation." *Cole v. International Union*, 533 F.3d 932, 937 (8th Cir. 2008). There is no grievance for the union to pursue if the employer has not breached the collective bargaining agreement. Thus, an employee's claims against the employer and the union "are interlocked: neither claim is viable if the other fails." *Crider v. Spectrulite Consortium, Inc.*, 130 F.3d 1238, 1241 & 1243 (7th Cir. 1997).

The undisputed facts demonstrate that Monte Carlo did not breach the Collective Bargaining Agreement when it changed Nigrelli's schedule and that Local 226 did not breach its duty of fair representation to Nigrelli in connection with Nigrelli's grievance over her schedule change.

### 1.   Monte Carlo did not breach the Collective Bargaining Agreement when it changed Nigrelli's hours on Mondays and Tuesdays.

Nigrelli claims that Monte Carlo breached the Collective Bargaining Agreement when it changed her schedule. FAC, ¶ 89. The First Amended Complaint, at ¶ 89, refers to "the

seniority protocols as mandated therein including the provisions of Article 20."  Articles 20.04(b) and 23.01 are the only sections of the Collective Bargaining Agreement that govern seniority and scheduling, SUF, ¶ 9; and no other agreements exist between Local 226 and Monte Carlo that support Nigrelli's position.  SUF, ¶11.  The undisputed facts show that the Monte Carlo did not violate the Collective Bargaining Agreement.

Article 20.04(b) gives employees with greater classification seniority the right to transfer to "vacant" positions.  SUF, ¶ 4.  Nigrelli has greater classification seniority than the cocktail server (Dana Wagner) whose shift Nigrelli wants to work on Mondays and Tuesdays, but Article 20.04(b) does not give Nigrelli the right to oust Wagner because Wagner's shift was not vacant.  When Monte Carlo management implemented a new schedule in April 2015, it did not change Wagner's shift at all.  SUF, ¶ 28.[5]

Nigrelli believes that Monte Carlo breached the Collective Bargaining Agreement because it moved her start time on Mondays and Tuesdays to 7 p.m. instead of moving Wagner's start time to 7 p.m.  SUF, ¶¶ 26, 29.  That choice did not violate the Collective Bargaining Agreement.  Article 23.01 recognizes Monte Carlo's "right" to make "scheduling" decisions, and states, "Seniority, among other factors, *will be considered* by the employer when

---

[5]   The change to Nigrelli's start and end time on Monday and Tuesday by two hours did not eliminate Nigrelli's bidded shift either.  This is because, under the longstanding "two-hour rule," Monte Carlo management may change the starting time of an employee's shift by two hours without creating a new shift.  SUF, ¶ 8.  As a result, the change to Nigrelli's hours had no significance under Article 20.04(b).  But even if Monte Carlo had eliminated Nigrelli's shift, Nigrelli could not bump a less senior server out of her shift.  The Collective Bargaining Agreement does not give Nigrelli that right.

making these decisions."  SUF, ¶ 7 (emphasis added).  This language does not require that

Monte Carlo make all scheduling decisions strictly based on seniority.  Monte Carlo

management did take seniority into account when it made the April 2015 schedule.  There are

two related reasons why Monte Carlo Beverage Director Nicholas Kabetso decided to change

the start time of Pit 3 (where Nigrelli works on Mondays and Tuesdays) rather than the start

time of Pit 1 (where Wagner works on Mondays and Tuesdays), one of which is based on

seniority.  Monte Carlo's practice is to keep the hours that a station is open consistent

throughout the week; and the cocktail server who works in Pit 1 on Wednesday through Sunday

has more seniority than the cocktail server who works in Pit 3 on Wednesday through Sunday.

SUF, ¶ 31.

Monte Carlo did not violate the Collective Bargaining Agreement when it moved

Nigrelli's start time by two hours on Mondays and Tuesdays.  Since breach of the Collective

Bargaining Agreement is an element of a duty of fair representation claim, *DelCostello*, 462

U.S. at 164-65; summary judgment should be granted.

**2.      Local 226 did not breach its duty to represent Nigrelli fairly.**

**a.      The duty of fair representation standard leaves Local 226 with discretion to decide how to administer the Collective Bargaining Agreement.**

A union violates its duty of fair representation to an employee it represents by handling

the employee's grievance in a way that is "arbitrary, discriminatory, or in bad faith."  *Vaca*, 386

U.S. at 190.  This is a not a rigorous standard.  It affords unions "wide discretion to act in ways

they perceive to be in their members' best interests."  *Peterson v. Kennedy*, 771 F.2d 1244,

1253 (9th Cir. 1985).

*Vaca*'s "arbitrary" prong governs a union's performance of ministerial acts while processing a grievance.  Its "discriminatory" and "bad faith" prongs govern how a union exercises its judgment.  *Salinas v. Milne Truck Lines, Inc.*, 846 F.2d 568, 569 (9th Cir. 1988).  But regardless of whether the union is performing a ministerial function or exercising its judgment, the union does not violate its duty of fair representation simply by making mistakes.  "A union decision is arbitrary only if it lacks a reasonable basis." *Stevens v. Moore Business Forms, Inc.*, 18 F.3d 1443, 1447 (9th Cir. 1994).  "[M]ere negligence is not arbitrariness.  The union must have acted in reckless disregard of the employee's rights." *Salinas*, 846 F.2d at 569 n.3.  Similarly, courts do not scrutinize a union's decisions about the merits of a grievance.  So long as the union deliberated and provides an explanation for the decision that it reached, the union has not breached its duty.  *Slevira v. Western Sugar Co.*, 200 F.3d 1218, 1221 (9th Cir. 2000).  This is true even if the court believes that the union made a wrong decision.  A union is not liable because it makes an error evaluating the merits of a grievance, unless there is proof of discrimination or bad faith.  *Conkle v. Jeong*, 73 F.3d 909, 916 (9th Cir. 1995).

In short, "the grievance process need not be error free – to constitute a breach of the duty of fair representation, more than a mere error of judgment must occur." *Stevens*, 18 F.3d at 1447; *see also Castelli v. Douglas Aircraft Co.*, 752 F.2d 1480, 1482 (9th Cir.1985) (same).  And the error must be intentional; "negligence on the part of the union does not constitute a breach of the duty of fair representation." *Slevira*, 200 F.3d at 1221; *see also Castelli*, 752 F.2d at 1482 (same).

### b.   Local 226 was justified in declining to arbitrate Nigrelli's grievance.

Nigrelli's core complaint against Local 226 is that Local 226 did not submit her grievance to arbitration.  That decision did not violate Local 226's duty to Nigrelli.  But a union is not required to arbitrate every grievance.  *Vaca*, 386 U.S. at 191.  Important policy objectives led the Supreme Court to adopt this rule:

> It can well be doubted whether the parties to collective bargaining agreements would long continue to provide for detailed grievance and arbitration procedures of the kind encouraged by LMRA § 203(d), if their power to settle the majority of grievances short of the costlier and more time-consuming steps was limited by a rule permitting the grievant unilaterally to invoke arbitration. . . .  [I]f a union's decision that a particular grievance lacks sufficient merit to justify arbitration would constitute a breach of the duty of fair representation because a judge or jury later found the grievance meritorious, the union's incentive to settle such grievances short of arbitration would be seriously reduced. The dampening effect on the entire grievance procedure of this reduction of the union's freedom to settle claims in good faith would surely be substantial.

*Id.* at 192-93.

Local 226's established practice is consistent with federal policy.  Local 226 dismisses grievances it deems unmeritorious before arbitration.  SUF, ¶ 37.  The grievance information sheet that Local 226 provides to employees who file grievances states this very clearly: "The Union does not arbitrate every grievance that has been deadlocked at the BOA.  Only those cases thought to have a good chance of success in arbitration go forward.  Many times the Union seeks the advice of its attorney."  SUF, ¶ 36 (Nigrelli Dep. Exh. 11).

It is not for the Court to decide whether Local 226's interpretation the Collective Bargaining Agreement and its assessment of the likelihood of success is correct.  "A union representative is entitled to decline to put forward an interpretation of the collective bargaining

agreement which he and his union reasonably believe is incorrect." *Conkle*, 73 F.3d at 915-16; *see also Patterson v. Int'l Bhd. of Teamsters Local 959*, 121 F.3d 1345, 1349 (9th Cir. 1997) (union did not breach duty of fair representation by failing to pursue theory that the plaintiff urged).

Nigrelli might point out that Local 226 representatives Johanna Dalton and Ester Dyer repeatedly urged the Monte Carlo managers to follow seniority in making the new schedule, including in connection with Nigrelli's hours. SUF, ¶¶ 20, 30, 42, 44-45. But that just proves that Local 226 vigorously represented Nigrelli before the new schedule was implemented and during the grievance process. It does not mean that Local 226 – or its counsel – ever believed that an arbitrator would adopt Dalton's and Dyer's argument on behalf of Nigrelli.

### c.   Nigrelli has no valid complaint with how Local 226 processed her grievance.

Experienced Grievance Specialist Esther Dyer was assigned Nigrelli's case, and Dyer followed Local 226's normal procedures. SUF, ¶ 38. First, a shop steward conducted an Internal Review Process meeting, but that was unsuccessful. SUF, ¶¶ 40-41. Next, Dyer attempted to settle the grievance informally, and when that was unsuccessful, she conducted a Board of Adjustment meeting. SUF, ¶¶ 42-44. After that failed to produce the result Nigrelli wanted, Dyer continued to press Monte Carlo to restore Nigrelli's hours. SUF, ¶ 45. Finally, Dyer sought advice from Local 226's attorney about whether Local 226 would be likely to prevail if Nigrelli's grievance were submitted to arbitration. The attorney advised Dyer that the grievance did not have any merit. SUF, ¶ 46. The steps that Dyer took are the same ones described in the information sheet about the Grievance Procedure that Nigrelli received when

1    she filed her grievance.  SUF, ¶ 36 (Nigrelli Dep. Exh. 11).

2         **d.    There is no evidence to support Nigrelli's hypothesis that Local 226**
3              **abandoned her grievance because Nigrelli's husband patronizes**
4              **Station Casinos.**

5         Nigrelli speculates that Local 226 decided not to arbitrate her grievance because

6    someone was displeased that her husband patronizes Station Casinos.  No evidence backs up

7    Nigrelli's speculation.  Grievance Specialist Esther Dyer made the decision to dismiss

8    Nigrelli's grievance without submitting it to arbitration.  Dyer did so based on the advice of

9    Local 226's counsel Richard McCracken.  SUF, ¶ 48.  Until this lawsuit was filed, neither Dyer

10   nor McCracken knew that Nigrelli's husband patronized Station Casinos.  SUF, ¶¶ 56-57.

11        **e.    The National Labor Relations Board already rejected Nigrelli's**
12              **theory.**

13        A violation of the duty of fair representation is also an unfair labor practice that may be

14   adjudicated by the National Labor Relations Board.  *Vaca*, 386 U.S. at 177-78.  Before filing

15   this suit, Nigrelli filed an unfair labor practice charge against Local 226 with the Board based

16   on the same conduct that forms the basis for this lawsuit.  SUF, ¶ 58.  Nigrelli presented all the

17   same facts that she alleges in the First Amended Complaint to the Board's Regional Office, and

18   that office dismissed Nigrelli's charge.  SUF, ¶¶ 59-60.  There is no new evidence that should

19   lead this Court to reach a different conclusion.

20   / / /

21   / / /

*Nigrelli v. Victoria Partners, et al.*                                    2:15-cv-01840-GMN-NJK
Local 226's Motion for Summary Judgment

**CONCLUSION**

For all of the foregoing reasons, summary judgement should be granted in favor of Defendant Culinary Workers Union Local 226.


Dated:  June 10, 2016                    McCRACKEN, STEMERMAN & HOLSBERRY

                                         _____*/s/ Kristin L. Martin*_____

                                         Kristin L. Martin
                                         Sarah Varela

                                         *Attorneys for Defendant Culinary Workers*
                                         *Union Local 226*

**CERTIFICATE OF SERVICE**

I am employed in the city and county of San Francisco, State of California. I am over the age of eighteen years and not a party to the within action; my business address is: DAVIS, COWELL & BOWE, LLP, 595 Market Street, Suite 800, San Francisco, California 94105.

On this 10th day of June, 2016, I caused to be served a true and correct copy of the above and foregoing:

- **DEFENDANT CULINARY WORKERS UNION LOCAL 226'S MOTION FOR SUMMARY JUDGMENT**

via ECF filing, properly addressed to the following:

| | |
|---|---|
| Frederick A. Santacroce | Paul T. Trimmer |
| SANTACROCE LAW OFFICES, LTD. | JACKSON LEWIS P.C. |
| 3275 S. Jones Blvd. Ste. 104 | 3800 Howard Hughes Pkwy., Ste. 600 |
| Las Vegas, Nevada 89146 | Las Vegas, NV 89169 |
| fasatty@yahoo.com | trimmerp@jacksonlewis.com |
| *Attorneys for Plaintiff Nigrelli* | *Attorneys for Defendants Victoria Partners d/b/a MGM Resort and Casino* |

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on this 10th day of June, 2016 at San Francisco, California.


_____ */s/ Lesley E. Phillips* _____
Lesley E. Phillips

CERTIFICATE OF SERVICE