A.M. SANTOS LAW, CHTD.
Antony M. Santos, Esq.
Nevada Bar No. 11265
3275 S. Jones Blvd. Ste. 104
Las Vegas, Nevada 89146
Phone:    (702) 749-4594
Facsimile: (702) 543-4855
tony@amsantoslaw.com

Attorneys for Plaintiff Nigrelli

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| LISA NIGRELLI, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>VICTORIA PARTNERS d/b/a MONTE CARLO RESORT AND CASINO, as the employer; CULINARY WORKERS UNION, LOCAL 226; and DOES 1-50, inclusive,<br><br>Defendants. | Case No. 2:15-cv-01840-GMN-NJK |

**OPPOSITION TO VICTORIA PARTNERS d/b/a MONTE CARLO RESORT AND CASINO MOTION FOR SUMMARY JUDGMENT**

Lisa Nigrelli ("Plaintiff" or "Nigrelli") hereby opposes VICTORIA PARTNERS d/b/a MONTE CARLO RESORT AND CASINO Motion for Summary Judgment. This opposition is based on the pleadings and papers on file in this action, any oral argument this Court may allow, and any other matter upon which this Court takes notice.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

Plaintiff Lisa Nigrelli initiated this suit alleging claims against the Monte Carlo Resort and Casino ("Employer") and the Culinary Workers Union Local 226 ("Union") based primarily on a breach of the collective bargaining agreement and a breach of duty respectively.

Local 226 opted not to submit Plaintiff's grievance to arbitration because its counsel failed to understand the facts and circumstances surrounding the grievance and as a consequence misguided the union to the substantive detriment of Plaintiff.

The management rights clause of the collective bargaining agreement reserves a wide range of management rights to the employer, except as otherwise specifically limited or altered by the collective bargaining agreement. In this case, the specific action of the employer in arbitrarily or capriciously offering a less senior employee a shift change desired by Plaintiff circumvents those seniority rights and the explicit terms and intent of the Collective Bargaining Agreement. Subsequent efforts to invoke an unwritten, obscure[1] *rule-of-thumb (the "two-hour rule)* and suggesting it constitutes an exception to the seniority provisions of the CBA as though said "rule" is bedrock law in this circuit, cannot substitute for the plain language of the Agreement and is misleading.

More troubling, it appears that Plaintiff's Union Representative and the Monte Carlo made their decision not to oblige Plaintiff's seniority request based upon the false presumption that this two hour rule was actually incorporated as a term in the CBA and therefore contractual in nature. Instead of obliging seniority considerations, Monte Carlo *randomly* chose which employees would be subject to schedule and shift changes, a methodology which effectively precludes seniority considerations.

The Monte Carlo could have obliged Plaintiff's request. It had no reasonably demonstrable or credible business purpose *not* to do so. Obliging Plaintiff would not have substantively interfered with the Monte Carlo's right to manage its business but would have honored the seniority rights union members have struggled so long to secure, protect and preserve. Rather than manipulating shifts changes and fabricating a rationale and contorting the facts so as to circumvent

---

[1] Obscure in the sense that despite numerous attempts by present counsel and the research staff at West Law, efforts to find any mention of the "Two-Hour Rule" in *any* case in *any* federal circuit failed. Upon information and belief the only substantive mention of this so-called rule appears in two (2) arbitration hearings. <u>In The Matter of a Controversy Between Sahara Hotel and Culinary Workers Union, Local 226</u> RE: \*\*\*, 1984 WL 162294, At \*5; <u>Flamingo Hotel, Employer and Culinary Workers Union Local 226</u> 1997 WL 24154. The same applies to the so-called 60% rule.

the import and intent of the cornerstone concept of seniority as bargained for, Monte Carlo could have easily avoided this suit. In addition, given that Plaintiff has suffered pecuniary loss, neither Union's motion nor Monte Carlo's motion can survive scrutiny in light of the evidence on the record thus far.

## STATEMENT OF MATERIAL FACTS PRESENTLY IN DISPUTE.

1. Nowhere in the Collective Bargaining Agreement ("CBA") are the terms "shift" or "station" actually defined. The Union, in its Motion for Summary Judgment *suggests* that those terms, particularly as used in Article 20.04(b) of the CBA *must* mean: (1) the days of the week and the hours that an employee works; and (2) the location that an employee works. Plaintiff refutes that said definitions are accurate or necessarily definitive. This is material given that core to this matter is whether or not shifts were changed in contravention of bidding practices and the other terms of the CBA.

2. Union and Monte Carlo each *claim* that there exists a "longstanding practice at the Monte Carlo" such that management creates a schedule of shifts and stations. It is the following: "when a shift and station become vacant, cocktail servers can bid to work the vacant shift and station. Cocktail servers cannot bid for the shift separately from the station, or vice versa." Yet this policy appears to contradict the plain language of 20.04(b) which explicitly mandates that the resulting available shift and/or station be filled by the next senior qualified employee(s) from another shift and/or station who desires to work on the shift or station where the vacancy exists. Given this, Cocktail servers *should* be entitled to bid for the shift separately from any given station. A question of fact remains as to (1) **whether or not this *is* legitimately a long-standing policy despite apparent exception(s) or rather, a red herring.**

3. With respect to this so-called longstanding policy, a question of fact remains as to whether this so-called long-standing policy **violates the collective bargaining agreement.**

4. Article 23.01 of the Collective Bargaining Agreement acknowledges an employer's right to manage its business and employees (subject to the CBA). Nonetheless, it mandates that an employer oblige or "consider" the CBA's provisions on seniority in so doing. Moreover; this right

- 3 -

may NOT otherwise conflict with the terms and conditions of the CBA. It appears that the Monte Carlo, in making its decision not to oblige Plaintiff, relied on the mistaken belief that it had **no duty** to consider seniority. A question of fact remains as to **whether or not Monte Carlo made its decision not to honor Plaintiff's seniority request based on a fundamental and flagrant misunderstanding of the CBA.**

    5.    Related to Item 4 above, it appears that Monte Carlo employed a random/blind methodology in determining whose schedule or shift would be modified. They covered up employee names and randomly chose. A question of fact remains as to whether or not this is so and **whether or not a random based decision-based strategy satisfies the mandate of seniority considerations.**

    6.    Defendants claim that the two-hour rule dictates, and trumps any provision in the CBA. Indeed it appears that both the Monte Carlo and Plaintiff's Union Representative actually believed at the time they made their decision that this rule-of-thumb was a term in the CBA. A question of fact remains as to **what effect this mistaken belief had on Union's decision NOT to arbitrate.**

    7.    Both Union and Monte Carlo claim that Monte Carlo is allowed to adjust schedules under the two-hour rule **without regard to seniority**. Both apparently believed it is a written term in the CBA. Both are wrong. Plaintiff believes the seniority provisions of the CBA should have prevailed. A question of fact remains as to **whether or not Monte Carlo or Union based their respective decisions on the erroneous belief that seniority considerations are immaterial.**

    8.    With respect to Item 6 above a secondary question of fact remains as to **whether or not Monte Carlo *adequately* contemplated (or for that matter considered at all) seniority considerations given the dictate of the CBA and industry practice.**

## PLAINTIFF'S SUMMARY OF FACTS

Pursuant to Rule 56-1 of the Local Rules of this Court, Plaintiff provides this Statement of Material Facts Not Genuinely in Issue. Said facts mirror those facts as itemized by the

Motion For Summary subject to those facts materially in dispute as set forth in the accompany Concise Statement of Facts in Dispute.

### A. Background

9. Plaintiff Lisa Nigrelli is and has been employed as a cocktail server at the Monte Carlo since approximately 1996. First Amended Complaint ("FAC"), Union MSJ Exh. A ¶¶ 10-12; Exh. 1, Nigrelli Dep. 50:7-18.

10. Local 226 represents cocktail servers at the Monte Carlo, including Nigrelli, for the purpose of collective bargaining. Exh. 1, Nigrelli Dep. 52:14-17; Union MSJ Dyer Aff., ¶ 3.

11. Monte Carlo and Local 226 entered into a Collective Bargaining Agreement for the period June 1, 2013 to May 31, 2018. Exh. 1, Nigrelli Dep. 25:24-26-5.

12. Said agreement governs Nigrelli's employment. Exh. 1, Nigrelli Dep. 25:24-26-5.; Union MSJ Dyer Aff., ¶ 5, Union MSJ Exh. A.

13. Article 20 of the Collective Bargaining Agreement (entitled "Seniority.") at paragraph 20.04(b) provides that:

> (b) When there is a permanent vacancy, or a temporary vacancy of at least ninety (90) days, on a particular shift or station, employees in the same job classification on other shifts or stations who desire to transfer to the vacancy will be transferred **on the basis of their classification seniority**[2], provided that the senior employee desiring transfer is qualified to perform satisfactorily the work on the shift and/or station applied for and that a qualified employee is available to replace the employee desiring to transfer. An employee transferred under this Section shall assume the weekly schedule of days of work and days off, and the daily shift scheduled, applicable to the vacant position to which he/she transfers, and the employee shall not be eligible for another transfer under this Section for six (6) months. An employee transferred under this Section who cannot perform satisfactorily the work on the shift or station to which transferred shall be transferred back to his/her former shift and/or station within thirty (30) shifts worked from the date of transfer. **The resulting vacancy or vacancies created by a transfer under this Section shall be filled by the next senior qualified employee(s) from another shift and/or station who desires to work on the shift or station where the vacancy exists.**[3] Permanent vacancies under this paragraph shall be posted for seventy-two (72) hours in the department where the vacancy exists. The Employer may fill the vacancy temporarily during the posting period.

Union MSJ Dyer Aff., ¶ 5, Union MSJ Exh. A, at 53.

14. Nowhere in the Collective Bargaining Agreement ("CBA") are the terms "shift" or "station" actually defined.

---

[2] Emphasis added.
[3] Id.

- 5 -

15. The Union, in its Motion for Summary Judgment *suggests* that those terms, particularly as used in Article 20.04(b) of the CBA *must* mean: (1) the days of the week and the hours that an employee works; and (2) the location that an employee works. Union MSJ P. 4, ¶¶ 5.

16. Union relies on deposition testimony of Kabesto (a Monte Carlo employee) and Union's counsel's own affidavit in making a definitive assertion as to the definitions of these terms. Union MSJ P. 4, ¶¶ 5.

17. Union and Monte Carlo each *claim* that there exists a "longstanding practice at the Monte Carlo" such that:

> [M]anagement creates a schedule of shifts and stations. For example, a shift and station might be Monday to Friday, 9 a.m. to 5 p.m. in a certain section of the casino floor. When a shift and station become vacant, cocktail servers can bid to work the vacant shift and station. Cocktail servers cannot bid for the shift separately from the station, or vice versa. Article 20.04(b) requires the Monte Carlo to assign the shift and station to the cocktail server who has the most seniority in the cocktail server classification who bid for the shift and station. Union MSJ P. 4, ¶¶ 6. ; Union MSJ Dyer Aff., ¶¶ 8-9.

18. Yet this policy appears to contradict the plain language of 20.04(b) which explicitly mandates that the resulting available shift and/or station be filled by the next senior qualified employee(s) **from another shift and/or station** who desires to work on the shift or station where the vacancy exists.

19. Given this, Cocktail servers *should* be entitled to bid for the shift separately from any given station.

20. And, despite this so-called long-standing "practice" exceptions are made frequently; for example.......

   A. On the new schedule at issue, Dana Wagner is a relief cocktail waitress. She works 6pm-2:00am on Sunday at Pit 4. Prior to this schedule/shift change she worked from 8:00pm-4:00am. The main employee on that station works 8:00pm-4:00am. This indirect conflict with this so-called industry practice rule that the relief person must follow the main person. This example directly correlates with Plaintiff's situation. *See*, Nigelli Aff 6:63-66; Exhibit 5

   B. Avita Hashemi works slots as a cocktail waitress (slot 11). She was going to be changed 7pm-3am. In that instant *based on seniority* Kabetso opted to keep her on her usual hours of 5pm-1am, thus applying an arbitrary standard unfairly affecting Plaintiff. *See*, Nigelli Aff 6:67-69; Exhibit 5

21. Article 23.01 of the Collective Bargaining Agreement acknowledges an employer's right to manage its business and employees (subject to the CBA). Nonetheless, it mandates that an employer oblige or "consider" the CBA's provisions on seniority in so doing. Moreover; this right may NOT otherwise conflict with the terms and conditions of the CBA. Exh. 1 Nigrelli Dep. 25:24-26-5; Union MSJ Dyer Aff., ¶ 3 and Union MSJ Exh. A, at 61.

22. It appears that the Monte Carlo, in making its decision not to oblige Plaintiff, relied on the mistaken belief that it had **no duty** to consider seniority.

23. Kabetso's Deposition testimony reads in part as follows:

> Kabetsos: Under the CBA, with the two-hour rule, seniority does not have to be looked at. It's management's right. Union MSJ Exh. M, Kabetso's Depo Page 84.
>
> And again, seniority has nothing to do with the two-hour time change. Changes made overall and past practice and consistency of relief shifts following the main shift are all the reasons why we made that change to pit 3 and to Lisa's hours as part of that. So that's why we're staying where we are. Seniority has nothing to do with it. By the CBA there's no contractual right that we have to look at seniority when making these changes. Union MSJ Exh. M, Kabetso's Depo Page 86.
>
> Q. When you keep saying that you're allowed to make these two-hour changes or one-day change, you said that was because of the CBA; is that correct?
>
> A Correct. I don't have the article number memorized, but there's an article in the CBA that allows management to adjust a scheduled shift, a bidded scheduled shift, two hours one way or the other. So if you start at 5:00, we can go to 7:00 or the other direction to 3:00. If their days off are Monday/Tuesday, we can shuffle them Sunday/Monday or Tuesday/Wednesday.
>
> Q And you've seen that language in the CBA?
>
> A Correct. Probably not the exact word for word version of it, but that's what it states.
>
> Union MSJ Exh. M, Kabetso,s Depo Page 87.

24. Article 23.01 reads as follows:

> The right to manage the Employer's business and the direction of its employees, including, but not limited to, the following rights, are reserved to the Employer. Such rights include the right to direct, plan and control operations, to determine the number of employees to be employed, and to determine the means, methods and schedules of operations. The Employer shall have the sole right to direct and control its employees. The Employer reserves the right, which is hereby recognized by the Union, to initiate any action toward any employee, including, but not limited to,

reclassification, retention, scheduling, assignment, promotion, transfer, layoff and/or rehire. **Seniority, among other factors, will be considered by the Employer when making these decisions. All of the foregoing rights are reserved to the Employer except to the extent they may be contrary to or inconsistent with the terms and conditions of this Agreement.**[4] Union MSJ Exh. A, at 61.

25. It is clear then that Monte Carlo made its decision not to honor Plaintiff's seniority request based on a fundamental and flagrant misunderstanding of the CBA.

26. In and about January of 2015 Monte Carlo's Beverage Manager Phillip Dow proposed a new schedule for cocktail servers. Union MSJ Exh. A, FAC, ¶ 16; Exh. 1 Nigrelli Dep. 86:1-10, 98:11-99:3, 95:18-96:14, 97:20-98:1; Nigrelli's Initial Grievance; Union MSJ Exh. M Kabetso Depo. 20:18-21:9, 21:23-22:9; Union MSJ Dalton Aff., ¶ 6.

27. The schedule changes that Mr. Dow proposed would have eliminated those shifts, and created new shifts. Union MSJ Exh. A FAC, ¶ 16; Exh. 1 Nigrelli Dep. 86:1-10, 98:11-99:3, 95:18-96:14, 97:20-98:1; Nigrelli's Initial Grievance; Union MSJ, Exh. M Kabetso Dep. 20:18-21:9, 21:23-22:9; Union MSJ Dalton Aff., ¶ 6.

28. As a result, the servers would bid for the shifts and stations, and the most senior cocktail server who bid for each shift and station would be assigned to it. Union MSJ Exh. A, FAC, ¶ 16; Exh. 1 Nigrelli Dep. 86:1-10, 98:11-99:3, 95:18-96:14, 97:20-98:1; Exh. 2, Nigrelli's Initial Grievance; Union MSJ Exh. M Kabetso Dep. 20:18-21:9, 21:23-22:9; Union Dalton Aff., ¶ 6.

29. But, between approximately January 8 and April 8, Dalton held approximately eight meetings with Monte Carlo cocktail servers and management so as to discuss servers' schedules. Union MSJ Exh. A FAC, ¶¶ 19, 21, 23-32, 36; Exh. 1 Nigrelli Dep. 87:2-13, 89:16-90:23; Union MSJ Exh. M Kabetso Dep. 43:13-18; Union MSJ Dalton Aff., ¶ 8.

30. In some of the meetings, Director of Beverage, Nicholas Kabetso and/or other Monte Carlo management participated. Union MSJ Exh. A FAC, ¶¶ 19, 21, 23-32, 36; Exh. 1 Nigrelli Dep. 87:2-13, 89:16-90:23; Union MSJ Exh. M Kabetso Dep. 43:13-18; Union MSJ Dalton Aff., ¶ 8.

31. Plaintiff participated in most or all of the meetings. Union MSJ Exh. A FAC, ¶¶ 19, 21, 23-32, 36; Exh. 1 Nigrelli Dep. 87:2-13, 89:16-90:23; Union MSJ Exh. M Kabetso Dep. 43:13-18; Union Dalton Aff., ¶ 8.

---

[4] Emphasis added.

32. In about February, Kabetso agreed not to implement the schedule changes that Dow had proposed. Rather, Kabetso proposed a new set of changes. Union MSJ Exh. M Kabetso Dep. 21:23-22:24, 37:21-23, 38:16-39:1; Union MSJ Dalton Aff., ¶ 11.

33. The new proposal resulted in a change to Plaintiff's shift of two hours and resulted in her making less money.

34. Defendants claim that the two-hour rule dictates, and trumps any provision in the CBA. Union MSJ Exh. M Kabetso Dep. 21:23-22:24, 37:21-23, 38:16-39:1; Union MSJ Dalton Aff., ¶ 11.

35. Indeed it appears that both the Monte Carlo and Plaintiff's Union actually believed at the time they made their decision that this rule-of-thumb was a term in the CBA.

36. Dalton's deposition testimony makes this clear:

> Dalton: The contract allows for two hours and the company wanted to change the hours by three.
>
> Plaintiff Counsel: When you say "the contract," you're talking about the Collective Bargaining Agreement, I assume?
>
> Dalton: Yes.
>
> Q   And Monte Carlo is a signatory to that Collective Bargaining Agreement with the union?
>
> A. Yes.
>
> Q   And when you talk about this two-hour change, you say that's in the Collective Bargaining Agreement?
>
> A   It's a known rule that we've used for the last 30 years, so we consider it like a contractual rule.

37. Kabetso even claimed that he had personally read the article in the CBA that included this two hour rule.

38. After Kabetso revised the shifts and schedule, (Dalton also believing that the two hour rule was part of the CBA yielded to the Monte Carlo.

39. Both Union and Monte Carlo claim that Monte Carlo is allowed to adjust schedules under the two-hour rule **without regard to seniority**.

40. Both believe it is a written term in the CBA.

1    41.    Both are wrong.

2    42.    Plaintiff believes the seniority provisions of the CBA should have prevailed.

3    43.    Indeed at one point, Dalton similarly believed that seniority considerations were paramount. Exh. 1 Nigrelli Dep. 94:23-95:1, 110:1-13, 114:3-23, 130:11-16; Union MSJ Exh. M Kabetso Dep. 41:8-14, 42:20-43:12, 84:20-85:1; Union MSJ Dalton Aff., ¶ 12.

44.    Inexplicably, she had a change heart, apparently because she believed this two-hour rule was in the CBA.

45.    Ultimately, Monte Carlo implemented the schedule changes on approximately April 13. FAC, ¶ 82; Exh. 1 Nigrelli Dep. 94:7-12; Union MSJ Exh. M Kabetso Dep. 92:6-13.

46.    As of April 13, Nigrelli was number four in seniority among the cocktail servers at Monte Carlo. FAC, ¶14.

47.    Her coworker, Dana Wagner is number eight in seniority. Prior to these shift changes, Plaintiff's work schedule was as follows:

| Days | Friday | Saturday | Sunday | Monday | Tuesday |
|---|---|---|---|---|---|
| Hours | 7 pm to 3 am | 5 pm to 1 am | 5 pm to 1 am | 5 pm to 1 am | 5 pm to 1 am |
| Location | Pit 9 | Pit 2 | Pit 2 | Pit 3 | Pit 3 |

FAC, ¶ 15; Ex. 1 Nigrelli Dep. 62:7-63:21

48.    Subsequent to the shift changes, Plaintiff's schedule was changed to the following:

| Days | Friday | Saturday | Sunday | Monday | Tuesday |
|---|---|---|---|---|---|
| Hours | 7 pm to 3 am | 5 pm to 1 am | 5 pm to 1 am | 7 pm to 3 am | 7 pm to 3 am |
| Location | Pit 9 | Pit 2 | Pit 2 | Pit 3 | Pit 3 |

Exh. 1 Nigrelli Dep. 61:11-62:6.

49.    Plaintiff has suffered a material financial loss as a result of this change to her shift schedule. FAC 10:5-6; 20-21; Exh. 1 Nigrelli Aff. p. 2

50.    Cocktail server Dana Wagner has less seniority than Nigrelli. Exh. 1 Nigrelli Dep. 118:17-19; Union MSJ Exh. M Kabetso Dep. 66:4-17.

51. Before April 13, Wagner worked in Pit 1 on Mondays and Tuesdays from 5 p.m. to 1 a.m. Wagner continued to work that schedule in Pit 1 after April 13. Exh. 1, Nigrelli Dep. 118:25-119:8; Union MSJ Exh. M Kabetso Dep. 67:5-9.

52. Because Plaintiff has more seniority than Wagner, Plaintiff should have been allowed to exercise her seniority rights under the CBA such that she would have been afforded the opportunity to choose which shift or schedule (5 p.m. to 1 a.m or 7 p.m. to 3 a.m). Exh. 1· Nigrelli Dep. 184:2.

53. For some time Dalton agreed with Plaintiff. She tried to persuade Monte Carlo to honor Plaintiff's seniority rights. Union MSJ Dalton Aff., ¶ 12.

54. But then somehow, Dalton was persuaded that this two-hour was a bedrock term in the CBA.

55. Monte Carlo declined to oblige Plaintiff apparently because it believed that it did not have to consider seniority at all. Union MSJ Dalton Aff., ¶ 12.

56. This decision contradicts the terms and provisions of the CBA.

57. Monte Carlo failed to fill the post at issue with "the next senior qualified employee(s) from another shift and/or station who desires to work on the shift or station where the vacancy exists."

50. It is undisputed that said individual would have been Plaintiff.

51. On about April 14, Nigrelli filed a grievance with Local 226 in which she challenged the change in her hours on Mondays and Tuesdays. Nigrelli based her grievance on Article 20 of the Collective Bargaining Agreement. Union MSJ Exh. A FAC, ¶ 58; Exh. 1, Nigrelli Dep. 191:7-20 and Exh.3, NLRB Determination Letter; Union MSJ Dyer Aff., ¶ 12.

52. Nigrelli's grievance was assigned to Local 226 Grievance Specialist Esther Dyer. Union MSJ Exh. A, FAC, ¶ 59; Union MSJ Dyer Aff., ¶ 12.

53. Dyer has been a Grievance Specialist with Local 226 since approximately August 1998. Union MSJ Dyer Aff., ¶ 2.

54. Dyer's duties as a Grievance Specialist are to process grievances that employees file with Local 226, attempt to resolve the grievances with management, and if unsuccessful at resolving a grievance, decide whether to submit the grievance to arbitration. Union MSJ Dyer Aff., ¶ 3.

55. When Nigrelli filed her grievance, she was given an informational handout entitled "The Grievance Procedure," which describes Local 226's policies for processing grievances. Exh. 1, Nigrelli Dep. 192:4-12; Union MSJ Dyer Aff., ¶ 13

56. Local 226's policy is to arbitrate grievances only if it believes that it is likely to prevail in the arbitration. Union MSJ Dyer Aff., ¶ 13.

57. When Dyer received Nigrelli's grievance, Dyer did not know about the schedule changes that Monte Carlo had implemented on about April 13. Union MSJ Exh. A FAC, ¶ 60.

58. The first step of the grievance process entails a meeting between the employee, a Local 226 shop steward, and a manager, which is known as "Step One" or an Internal Review Process meeting. Union MSJ Dyer Aff., ¶ 14.

59. On about April 30, Nigrelli, Local 226 shop steward Pam Parra and Nicholas Kabetso held an Internal Review Process meeting. Parra and Nigrelli were unsuccessful at resolving Nigrelli's grievance because Monte Carlo refused to change Nigrelli's hours. Union MSJ Exh. A, FAC, ¶¶ 61-62; Exh. 1 Nigrelli Dep. 192:13-194:4, 195:1-196:21; Union MSJ Exh. M, Kabetso Dep. 79:5-13.

60. Next, Dyer attempted to resolve Nigrelli's grievance with Monte Carlo's human resources staff, but Dyer was unsuccessful. Union MSJ Exh. A, FAC, ¶¶ 63-64; Union MSJ Dyer Aff., ¶ 15.

61. The second step of the grievance process is a Board of Adjustment meeting. Union MSJ Dyer Aff., ¶ 14.

62. On May 21, a Board of Adjustment meeting was held about Nigrelli's grievance. Dyer represented Nigrelli in the Board of Adjustment. Monte Carlo was represented by a human resources employee named Casey Dake. Kabetso was also present. Dyer asked Kabetso if it was possible to change Nigrelli's schedule on Mondays and Tuesdays back to 5 p.m. to 1 a.m., as Nigrelli wanted. Kabetso said that it was possible. Dyer asked Monte Carlo's representatives to make the change that Nigrelli wanted. Monte Carlo's representatives did not agree to do so. FAC, ¶¶ 65-71; Exh. 1, Nigrelli Dep. 196:22-201:3; Union MSJ Dyer Aff., ¶¶ 16-17.

63. Following the Board of Adjustment meeting, Dyer again asked Dake to change Nigrelli's schedule on Mondays and Tuesdays back to 5 p.m. to 1 a.m., as Nigrelli wanted. Monte Carlo declined to do so. Union MSJ Exh. A, FAC, ¶¶ 80, 83; Nigrelli Dep. 203:24-204:10; Dyer Aff., ¶ 18.

64. In about August, Dyer sought advice from Local 226's counsel Richard McCracken about Nigrelli's grievance. McCracken advised Dyer that Nigrelli's grievance did not have any merit. Union MSJ Dyer Aff., ¶ 19; Union McCracken Aff., ¶¶ 6-8.

65. Regrettably it appears that McCracken too was fundamentally mistaken with respect to the nature of Plaintiff's rather modest request. Nigrelli Aff. Page 5-6, 48-64; Exh. 4 Nigrelli NHB Aff. 3:26. His affidavit in support of Union's Motion for Summary Judgment makes this clear. It reads in part as follows:

> When I advised Ms. Dyer, I understood that a cocktail server who has less seniority than Ms. Nigrelli works in Pit 1 on Mondays and Tuesdays starting at 5 p.m., the time that Ms. Nigrelli would like to start working. The Collective Bargaining Agreement does not give Ms. Nigrelli the right to work in Pit 1 on Mondays and Tuesdays even though she has more seniority than the other cocktail server. Ms. Nigrelli bid to work in Pit 3 on Mondays and Tuesdays, not Pit I. The Collective Bargaining Agreement also does not allow Local 226 to insist that Monte Carlo management open Pit 3 at 5p.m. instead of Pit I. The "management's rights" provision of the Collective Bargaining Agreement, Section 23.01, reserves to management important aspects of running its business, including specifically the right to determine "schedules of operations".

66. McCracken makes this statement on the erroneous presumption that what plaintiff asking for is to demand that Monte Carlo open Pit 3 at 5 pm. Instead of Pit 1.

67. The fact is that pit is open all the time, that is, 24 hours a day; 7 days a week. It is *already* open at 5PM.

68. McCracken fundamentally miscomprehends and therefore misconstrues or misrepresents what Plaintiff is asking for. Nigrelli Aff. 5:48-59 and Exh. 2 Nigrelli Initial Grievance.

69. How then could the Union (including Dyer) have adequately represented Plaintiff's interests in dispute resolution either with the Monte Carlo or in the grievance process, if they fail understand the Plaintiff request(s) *and* the core issue (specifically whether or not the two- rule is a contractual provision in the CBA or merely a rule of thumb)?

70. Plaintiff seniority request for the hours that the less-senior Dana received had no impact on when pit 1 or pit 3 opened or closed. They are both always open.

71. Local 226 dismissed Plaintiff's grievance without submitting it to arbitration. Union MSJ Dyer Aff., ¶ 20; Exh. 1 Nigrelli Dep. 205:15-17, 207:16-25

72. Dyer admitted that she made the decision to dismiss Nigrelli's grievance without submitting it to arbitration because Local 226's counsel (McCracken) advised Dyer that the grievance did not have merit. Union MSJ Dyer Aff., ¶ 20.

73. McCracken, as late as his penning of the affidavit supporting Union's MSJ, *still doesn't understand the basic facts and circumstances* surrounding Plaintiff's modest request.

74. His review was premised on an erroneous belief of material consequence. That is, that Plaintiff had demanded that Monte Carlo open a pit and exchange shifts between her and Dana. This is simply wrong.

### *The NLRB dismissed Plaintiff's unfair labor practice charge As a result of a flagrant misunderstanding of the fundamental facts and circumstances.*

85. Nigrelli filed an unfair labor practice charge with the National Labor Relations Board against Local 226. That unfair labor practice charge was based on the same conduct that forms the basis for this lawsuit. Exh. 1 Nigrelli Dep. 211:10-211:15, 213:7-16.

86. Nigrelli provided an affidavit to the NLRB investigator. Exh. 1 Nigrelli Dep. 213:17 214:21; Exh. 4 Nigrelli NLRB Aff. That affidavit contained the same facts as are alleged in the First Amended Complaint. *Compare* Union MSJ Exh. A FAC, ¶¶ 11-87 *with* Exh. 4 Nigrelli NLRB Aff.

87. Despite this, it is readily apparent that the NLRB also failed to comprehend the nature of Plaintiff's grievance. Their written decision simply states that it has opted not to proceed. It reads in part as follows:

> We have carefully investigated and considered your charge that Local Joint Executive Board Las Vegas, a/w UNITE HERE International Union has violated the National Labor Act.
> Decision to Dismiss: Based on that investigation, I have decided to dismiss your charge because there is insufficient evidence to establish a violation of the Act.

Exh. 3, NLRB Determination Letter.

# LEGAL ARGUMENT
## Summary Judgment Is Inappropriate Because Material Issues of Fact Remain As To Defendant's Liability.

Summary judgment is only authorized by FED. R. Civ. Pro. 56(c), in those cases in which the moving party has demonstrated the absence of an issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). "Reasonable doubts concerning the existence of a factual issue should be resolved against the moving party." T.W. Electric Serv., Inc., et al. v. Pacific Electrical Contractors Association, 809 F.2d 626, 630 (9th Cir. 1986). In order for a court to conclude that there are no genuine issues of material fact, the court must be satisfied that no reasonable trier of fact could have found for the non-movant, or, in other words, that the evidence favoring the non-movant is insufficient to enable a reasonable jury to return a verdict for the non-movant. See, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 n. 4, 106 S. Ct. 2505 (1986).

For the reasons set forth below, Defendant has failed to demonstrate the absence of material facts in relation to the claims contained within Plaintiff's' complaint. As such, Defendant's Motion should be denied in its entirety.

### *Plaintiff's Claims*

Plaintiff's first cause of action is for breach of the Collective Bargaining Agreement. Union MSJ Exh. A FAC, ¶¶ 88-92. Plaintiff alleges that Monte Carlo breached the Collective Bargaining Agreement by failing to implement the seniority provisions when Plaintiff's schedule was changed. Union MSJ Exh. A FAC, ¶ 90.

### *Monte Carlo Breached the Terms of the CBA*

The facts demonstrate that Monte Carlo breached the Collective Bargaining Agreement when it refused to oblige Plaintiff; concluding instead that (1) the two hour rule is a written term in the CBA; and (2) that it is not obliged to consider seniority in direct contravention of Article 23.01.

Monte Carlo breached the Collective Bargaining Agreement when it changed Plaintiff's schedule. Union MSJ, Exh. A FAC, ¶ 89. The undisputed facts show that the Monte Carlo operated under the presumption that the two hour rule was term in the CBA and that seniority need not be consideration in direct violation of Article 23.01

**Seniority, among other factors, will be considered by the Employer when making these decisions. All of the foregoing rights are reserved to the Employer except to the extent they may be contrary to or inconsistent with the terms and conditions of this Agreement.**

It is undisputed that Plaintiff has greater classification seniority than the cocktail server (Dana Wagner). Plaintiff did not want Dana's shift. Dana would keep her shift. Rather to that someone's shift had to be modified, it should have been Dana's. That would reflect the import of Seniority with absolutely now reasonable adverse effect on the Monte Carlo.

Plaintiff believes that Monte Carlo breached the Collective Bargaining Agreement because it moved her start time on Mondays and Tuesdays to 7 p.m. instead of moving Wagner's start time to 7 p.m. Union MSJ SUF, ¶¶ 26, 29. Kabetso admits that he made his decision under a two-fold false presumption: (1) that the two hour is in the CBA; (He read it there himself!); and (2) Seniority is not a factor. It is quite apparent given the language of Article 23.01 that "Seniority, among other factors, *will be considered* by the employer when making these decisions." Union MSJ SUF, ¶ 7 (emphasis added). Plaintiff believes that Monte Carlo's claimed practice is to keep the hours that a station is open consistent throughout the week is a red herring and that it has made exceptions to this practice. In any event the Monte Carlo cannot establish any marginal benefit for such a so-called practice.

More so, it is abundantly clear that Monte Carlo could not have considered seniority given that Kabesto covered up the names of the cocktail waitresses in determining which of their schedules and shifts to change. Instead of obliging seniority considerations, Monte Carlo *randomly* chose which employees would be subject to schedule and shift changes, a methodology which effectively precludes seniority considerations.

Here, opposing counsel suggests that a decades long "rule-of thumb" (the two-hour rule) (and its companion 60% rule) govern as an exception to the seniority rules notwithstanding the fact that in the past several *decades* the union has had multiple opportunities to memorialize or enshrine these so-called rules in the CBA given the number of times it has been amended in the past several

decades. Moreover it appears that no court of competent or sufficient jurisdiction has ever deliberated on this rule-of-thumb and its impact on the terms and conditions of the CBA.[5]

Here, questions of fact plainly remain as to Monte Carlo's method by which it chose to act. The facts suggest that they could not have taken into consideration seniority factors as mandated by Article 23.01. Worse yet, Monte Carlo seems to believe that some rule-of-thumb trumps the CBA.

These facts viewed alone or cumulatively demonstrate that, at a minimum, Plaintiff has set forth sufficient facts to defeat summary judgment.

## CONCLUSION

For the foregoing reasons, Plaintiff requests that Defendant Culinary Workers Union Local 226's Motion for Summary Judgment be denied as there are significant and genuine issues of material fact exist which preclude entry of summary judgment in favor of the Defendant.

To reiterate, those issues and facts are:

1. Nowhere in the Collective Bargaining Agreement ("CBA") are the terms "shift" or "station" actually defined. The Union, in its Motion for Summary Judgment *suggests* that those terms, particularly as used in Article 20.04(b) of the CBA *must* mean: (1) the days of the week and the hours that an employee works; and (2) the location that an employee works. Plaintiff refutes that said definitions are accurate or necessarily definitive. This is material given that core to this matter is whether or not shifts were changed in contravention of bidding practices and the other terms of the CBA.

2. Union and Monte Carlo each *claim* that there exists a "longstanding practice at the Monte Carlo" such that management creates a schedule of shifts and stations. It is the following: "when a shift and station become vacant, cocktail servers can bid to work the vacant shift and station. Cocktail servers cannot bid for the shift separately from the station, or vice versa." Yet this policy appears to contradict the plain language of 20.04(b) which explicitly mandates that the resulting available shift and/or station be filled by the next senior qualified employee(s) from another shift and/or station who desires to work on the shift or station where the vacancy exists. Given this, Cocktail servers *should* be entitled to bid for the shift separately from any given station. A question of fact remains as to (1) **whether or not this *is* legitimately a long-standing policy despite apparent exception(s) or rather, a red herring.**

3. With respect to this so-called longstanding policy, a question of fact remains as to whether this so-called long-standing policy **violates the collective bargaining agreement.**

4. Article 23.01 of the Collective Bargaining Agreement acknowledges an employer's right to manage its business and employees (subject to the CBA). Nonetheless, it

---

[5] The same is so for the 60% rule.

mandates that an employer oblige or "consider" the CBA's provisions on seniority in so doing. Moreover; this right may NOT otherwise conflict with the terms and conditions of the CBA. It appears that the Monte Carlo, in making its decision not to oblige Plaintiff, relied on the mistaken belief that it had **no duty** to consider seniority. A question of fact remains as to <u>**whether or not Monte Carlo made its decision not to honor Plaintiff's seniority request based on a fundamental and flagrant misunderstanding of the CBA.**</u>

5. Related to Item 4 above, it appears that Monte Carlo employed a random/blind methodology in determining whose schedule or shift would be modified. They covered up employee names and randomly chose. A question of fact remains as to whether or not this is so and <u>**whether or not a random based decision-based strategy satisfies the mandate of seniority considerations.**</u>

6. Defendants claim that the two-hour rule dictates, and trumps any provision in the CBA. Indeed it appears that both the Monte Carlo and Plaintiff's Union Representative actually believed at the time they made their decision that this rule-of-thumb was a term in the CBA. A question of fact remains as to <u>**what effect this mistaken belief had on Union's decision NOT to arbitrate.**</u>

7. Both Union and Monte Carlo claim that Monte Carlo is allowed to adjust schedules under the two-hour rule <u>**without regard to seniority**</u>. Both apparently believed it is a written term in the CBA. Both are wrong. Plaintiff believes the seniority provisions of the CBA should have prevailed. A question of fact remains as to <u>**whether or not Monte Carlo based their respective decisions on the erroneous belief that seniority considerations are immaterial.**</u>

8. With respect to Item 6 above a secondary question of fact remains as to <u>**whether or not Monte Carlo *adequately* contemplated (or for that matter considered at all) seniority considerations given the dictate of the CBA and industry practice.**</u>

Dated this 14th day of July 2016.

A.M. SANTOS LAW, CHTD.

ANTONY M. SANTOS, ESQ.
Nevada Bar No. 11265
tony@amsantoslaw.com
3275 S. Jones Blvd. Ste. 104
Las Vegas, Nevada 89146
Phone: (702) 749-4594
Facsimile: (702) 543-4855

## CERTIFICATE OF SERVICE

I hereby certify that a service of the OPPOSITION TO VICTORIA PARTNERS d/b/a MONTE CARLO RESORT AND CASINO MOTION FOR SUMMARY JUDGMENT was made this 14 day of July, 2016, in the by placing the document(s) listed above in a sealed envelope with prepaid postage affixed, addressed to the parties listed below, and deposited in the U.S. Mail.

MCCRACKEN STEMERMAN & HOLSBERRY
KRISTIN L. MARTIN, ESQ.
1630 S. Commerce St. Ste. A-1
Las Vegas, Nevada 89102
Attorney for Culinary Workers Union Local 226

JACKSON LEWIS P.C.
PAUL T. TRIMMER, ESQ.
3800 Howard Hughes Pkwy. Ste. 600
Las Vegas, Nevada 89169
Attorney for Victoria Partners

FREDERICK A. SANTACROCE, ESQ.
3275 S. Jones Blvd. Ste. 104
Las Vegas, NV 89146
Attorney for Plaintiff

An employee of A.M. Santos Law, Chtd.