A.M. SANTOS LAW, CHTD.
Antony M. Santos, Esq.
Nevada Bar No. 11265
3275 S. Jones Blvd. Ste. 104
Las Vegas, Nevada 89146
Phone:    (702) 749-4594
Facsimile: (702) 543-4855
tony@amsantoslaw.com
Attorneys for Plaintiff Nigrelli

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| LISA NIGRELLI, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>VICTORA PARTNERS d/b/a MONTE CARLO RESORT AND CASINO, as the employer; CULINARY WORKERS UNION, LOCAL 226; and DOES 1-50, inclusive,<br><br>Defendants. | Case No. 2:15-cv-01840-GMN-NJK<br><br>**DECLARATION OF LISA NIGRELLI IN SUPPORT OF OPPOSITION TO VICTORIA PARTNERS d/b/a MONTE CARLO RESORT AND CASINO MOTION FOR SUMMARY JUDGMENT** |

I, Lisa Nigrelli, being first duly sworn upon my oath, state as follows:

1. I have personal knowledge of the following facts and of called, could and would testify competently thereto.

2. I have been given assurances by an agent of the National Labor Relations Board (NLRB) that this Confidential Witness Affidavit will be considered a confidential law enforcement record by the NLRB and will not be disclosed unless it becomes necessary to produce this Confidential Witness Affidavit in connection with a formal proceeding.

3. I reside at 3805 Crema Court, Las Vegas, NV 89129

4. I am employed by Monte Carlo Resort and Casino located at 3770 Las Vegas Boulevard South, Las Vegas, NV 89109

5. My employment with the Monte Carlo Resort and Casino began sometime in 1996.

6. I was hired as a cocktail server in the black jack area.

7. There are approximately fifty (50) cocktail servers in the department.

8. Based on seniority I am number #4. My current schedule is Friday, 7:00 p.m. to 3:00 a.m., Saturday, 5:00 p.m. to 1:00 a.m., Sunday, 5:00 p.m. to 1:00 a.m. and off on Wednesday and Thursday.

9. Monday and Tuesday is the problem because I always have been scheduled to work from 5:00 p.m. to 1:00 a.m. on these days.

10. However, Monte Carlo Director of Beverage Nick Kabetso changed the schedules sometime in January 2015.

11. He held a meeting for all employees in the Beverage department.

12. There are approximately 50 employees in the Beverage department. The purpose of the meeting was to go over the floor schedule for the cocktail servers.

13. I don't know why they wanted to change the schedule but employees were told that management wanted to get things in line for the new arena opening which is scheduled to open in April 2016. My Union, the Culinary Workers Union Local 226 was also a part of the meeting.

14. Union Department Head Johanna Dalton and other Union representatives represented us at the meeting.

15. Beverage Manager Phillip Dow represented the hotel.

16. Department Head Dalton started the meeting by telling us that we were going over the schedule and needed our input to determine what was wrong with the schedule. The reason that she said this was because

17. Beverage Manager Dow did not go by the contract which eliminated 16 shifts and added shifts for us to bid on. In addition, he changed our shifts 3 hours instead of 2 hours. For example, my regular scheduled was 5:00 p.m. to 1:00 a.m. but he changed it from 8:00 p.m. to 4:00 a.m. which was a violation of the contract.

18. At that point, she asked us for input. We reviewed everyone's schedule and stayed a couple of hours.

19. Once we reviewed everyone's schedule, Dept. Head Dalton was going to present it to Beverage Manager Dow the next day. He had already left the meeting before we finished reviewing everyone's schedule.

20. At this point, no grievance had been filed by any of us. We had a total of eight meetings from January 8, 2015 through April 8, 2015. (Exhibit 1 is a copy of the Collective Bargaining Agreement.

21. On Wednesday, April 8, 2015, we had a final meeting regarding the schedule. Organizers Samson Edea and Leonel Batres represented us. Department Head Dalton was not present at this meeting.

22. Lucy, Angela and I were present and Beverage Manager Nick and HR Rep Dake were present for the hotel. They had me scheduled from 7:00 p.m. to 3:00 a.m. which was wrong, although he was told repeatedly to keep me at 5:00 p.m. to 1:00 a.m.

23. I spoke but Union Organizers Samson and Leonel did not say anything in the meeting. The meeting ended without a resolution. I am still fighting for my schedule to be change to 5:00 p.m. to 1:00 a.m.

24. After the final meeting on April 8, 2015, Organizers Samson Edea and Leonel Batres said that they wanted to talk with me. I did not have any idea what they wanted to talk about but I thought it was about my schedule. So, we went to the employee's dining room to talk. At that point, they asked me if I go to Station Casinos. I said yes and they said that they were given a video of my husband who is not employed by Station Casinos or the Monte Carlos or MGM properties.

25. I asked who sent the video. They refused to tell me but told me as a union member and the fact that my husband get union benefits, we should not be going to Station Casinos. I took this as a threat of my union membership as well as my health insurance benefits because my husband has cancer.

26. They never mentioned anything about my schedule and that was the end of the meeting.

27. They just looked at me and I walked out. Samson participated in all 8 meetings but Leonel only participated in approximately 3 meetings so they had knowledge of my situation.

28. On Tuesday, April 14, 2015, I filed a grievance with the Union disputing my work hours because management did not go by seniority. The grievance was assigned to Grievance Specialist Esther Dyer. GS Dyer was not a part of the initial meetings so she did not have any knowledge of the changes in the schedules that took place sometime in January 2015. (Exhibit 2 is a copy of the Grievance).

29. On Thursday, April 30, 2015, I had to go through an Internal Resolution process with Manager Nick Kabetso and Shop Steward Pam Parra.

30. Upon information and belief, this is required per contract.

31. We were unable to come to a resolution therefore the grievance moved to the next step of the grievance process.

32. On Monday, May 18, 2015, I received a telephone call from GS Dyer asking me about my grievance and telling me that she thinks she could resolve it without going to a Board of Adjustment.

33. Several days later, I received a telephone call from the Union informing me that GS Dyer was unable to resolve my grievance therefore it had to go to the Board of Adjustment.

34. On Thursday, May 21, 2015, I had my Board of Adjustment meeting in the Human Resources' department around 11:00 a.m. Grievance Specialist Esther Dyer, Director of Beverage Nick Kabetso, and HR Rep Casey Dake were present.

35. The purpose of the meeting was to discuss my grievance regarding my schedule.

36. Nick admitted that he covered all names up and did not do the schedule according to seniority.

37. GS Dyer asked if it was doable to change my schedule back to the original 5:00 p.m. to 1:00 a.m.

38. Kabetso said it was doable. That ended the meeting and they said they would get back to me. GS Dyer also said she would get back to me.

39. On Thursday, May 28, 2015, I called and left a message on Esther's voicemail inquiring about the status of my grievance.

40. On Friday, June 5, 2015, I called Esther again but this time I spoke with her. She told me that she was still working on my grievance. She also told me that she needed to talk with Johanna and get back to me.

41. On Monday, June 22, 2015, I called her again but learned that she was on vacation until June 29, 2015.

42. On Monday, June 29, 2015, I called her and left a message and July 1, 2015, July 6, 2015, and July 8, 2015. I also called her boss who is Norbert Kubiak but only left a message. I continued to leave messages on July 10, and 13, 2015. I also requested a meeting to talk with Secretary-Treasurer Ted Pappageorge.

43. Later that day, Esther called me around 6:20 p.m. She told me that she was still waiting to hear from the hotel. I said since May 21, 2015. She responded by saying it takes time.

44. I asked when would I know?

45. She said when the schedules change. The schedules are posted every week.

46. The schedule changes went into effect on April 13, 2015. (Exhibit 3 is a copy of my Bid Shifts)

47. As a result of this change to my shift and schedule I now make significantly less money in tips.

48. I don't believe that Union in-house counsel McCracken understands the nature of my grievance.

49. As a result I believe Dyer was misinformed in pursuing my grievance.

50. Upon information and belief, Dyer sought advice from Local 226's counsel Richard McCracken about my grievance.

51. McCracken advised Dyer that my grievance did not have any merit.

52. McCracken was fundamentally mistaken with respect to the nature of my rather modest request.

53. McCracken makes this statement on the erroneous presumption that what I am asking for is to demand that Monte Carlo open Pit 3 at 5 pm. Instead of Pit 1.

54. The fact is that Pit 3 is open all the time, that is, 24 hours a day; 7 days a week.

55. It is already open at 5PM.

56. McCracken fundamentally miscomprehends and misconstrues or misrepresents what I am requesting.

57. It has no impact on when pit 1 or pit 3 opened or closed.

58. They are both always open.

59. Local 226 dismissed my grievance without submitting it to arbitration.

60. In her affidavit Dyer admitted that she made the decision to dismiss my grievance without submitting it to arbitration because Local 226's counsel (McCracken) advised Dyer that the grievance did not have merit.

61. McCracken, as late as his penning of the affidavit supporting Union's MSJ, still doesn't understand the basic facts and circumstances surrounding my grievance.

62. His review was premised on an erroneous belief that I had demanded that Monte Carlo open a pit and exchange shifts between her and Dana. This is simply wrong.

63. On the new schedule at issue, Dana Wagner is a relief cocktail waitress. She works 6pm-2:00am on Sunday at Pit 4.

64. Prior to this schedule/shift change she worked from 8:00pm-4:00am. The main employee on that station works 8:00pm-4:00am.

65. This indirect conflict with this so-called industry practice rule that the relief person must follow the main person.

66. This example directly correlates with my situation.

67. Avita Hashemi works slots as a cocktail waitress (slot 11).

68. She was going to be changed 7pm-3am.

69. In that instance based on seniority, Kabetso opted to keep her on her usual hours of 5pm-1am, thus applying an arbitrary standard unfairly affecting me.

70. I strongly feel that the Union has violated its duty of fair representation by representing me and failing to resolve my grievance. Grievance Specialist Esther Dyer has not thoroughly investigated my grievance but allowed it to be unresolved since April 14, 2015.

71. The union organizers have attempted to threaten me about my husband, my benefits, and membership in order for me to let this go.

72. The only thing I want is to work my bidded shift which is 5:00 p.m. to 1:00 a.m. on Monday and Tuesday.

I declare that the forgoing is true and correct.

Executed this _____ day of July 2016.

_____
LISA NIGRELLI

**CERTIFICATE OF SERVICE**

I hereby certify that a service of the DECLARATION OF LISA NIGRELLI IN SUPPORT OF OPPOSITION TO VICTORIA PARTNERS d/b/a MONET CARLO RESORT AND CASINO MOTION TO SUMMARY JUDGMENT was made this 14 day of July, 2016, via ECF filing to the parties listed below:

MCCRACKEN·STEMERMAN & HOLSBERRY
KRISTIN L. MARTIN, ESQ.
1630 S. Commerce St. Ste. A-1
Las Vegas, Nevada 89102
Attorney for Culinary Workers Union Local 226

JACKSON LEWIS P.C.
PAUL T. TRIMMER, ESQ.
3800 Howard Hughes Pkwy. Ste. 600
Las Vegas, Nevada 89169
Attorney for Victoria Partners

FREDERICK A. SANTACROCE, ESQ.
3275 S. Jones Blvd. Ste. 104
Las Vegas, NV 89146
Attorney for Plaintiff

_____
An employee of A.M. Santos Law, Chtd.