Kristin L. Martin (Nevada Bar No. 7807)
Sarah Varela (Nevada Bar No. 12886)
McCRACKEN, STEMERMAN & HOLSBERRY
1630 Commerce Street, Suite A-1
Las Vegas, Nevada 89102
Tel:   (702) 386-5107
Fax:   (702) 386-9848
Email: klm@dcbsf.com
         svarela@dcbsf.com

*Attorneys for Defendants Culinary Workers Union Local 226*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| LISA NIGRELLI, an individual,<br><br>              Plaintiff,<br><br>       vs.<br><br>VICTORIA PARTNERS d/b/a MONTE CARLO RESORT AND CASINO, as the employer; CULINARY WORKERS UNION, LOCAL 226; and DOES 1-50, inclusive,<br><br>              Defendants. | CASE NO. 2:15-cv-01840-GMN-NJK<br><br>**Local 226's Responses to Plaintiff's Concise Summary of Disputed Facts** |

Culinary Workers Union Local 226 responds to Plaintiff's Concise Summary of Disputed Facts as follows:

**Plaintiff's Disputed Fact No. 1**

Nowhere in the Collective Bargaining Agreement ("CBA") are the terms "shift" or "station" actually defined.  The Union in its Motion for Summary Judgment suggests that those terms, particularly as used in Article 20.04(b) of the CBA must mean:  (1) the days of the week and the ours

1

that an employee works; and (2) the location that an employee works. This is material given that core to this matter is whether or not shifts were changed in contravention of bidding practices and the other terms of the CBA. Union MSJ P. 4, ¶¶ 5; Nigrelli Aff.

**Local 226's Response to Disputed Fact No. 1**

Local 226 agrees that the Collective Bargaining Agreement does not contain definitions for the terms "shift" and "station." In support of its motion for summary judgment, Local 226 provided testimony from two witness regarding how Local 226 and Monte Carlo (the parties to the Collective Bargaining Agreement) have interpreted those terms. *See* Local 226's Statement of Undisputed Facts ("SUF"), ¶ 5. Nigrelli does not identify any evidence that the terms have ever been interpreted any differently.

**Plaintiff's Disputed Fact No. 2**

Union and Monte Carlo each claim that there exists a "longstanding practice at the Monte Carlo" such that management creates a schedule of shifts and stations. It is the following: "when a shift and station become vacant, cocktail servers can bid to work the vacant shift and station. Cocktail servers cannot bid for the shift separately from the station, or vice versa." Yet this policy appears to contradict the plain language of 20.04(b) which explicitly mandates that the resulting available shift and/or station be filled by the next senior qualified employee(s) from another shift and/or station who desires to work on the shift or station where the vacancy exists. Given this, Cocktail servers should be entitled to bid for the shift separately from any given station. A question of fact remains as to (1) whether or not this is legitimately a long-standing policy despite apparent exception(s) or rather, a red herring. Union MSJ P. 3, ¶¶4; Nigrelli Aff.

**Local 226's Response to Disputed Fact No. 2**

In support of its motion for summary judgment, Local 226 provided testimony regarding the established practices at Monte Carlo for scheduling employees and how employees bid for schedules. *See* Local 226's SUF, ¶ 6. Nigrelli does not identify any evidence that Article 20.04(b)'s provision for bidding on vacant shifts and stations has ever been implemented any differently.

**Plaintiff's Disputed Fact No. 3**

With respect to this so-called longstanding policy, a question of fact remains as to whether this so-called long-standing policy violates the collective bargaining agreement.

**Local 226's Response to Disputed Fact No. 3**

Whether the established practice for scheduling employees violates the Collective Bargaining Agreement does not present a factual dispute. Interpretation of a collective bargaining agreement is a question of law. *Ass'n. of Flight Attendants v. Mesa Air Group*, 567 F.3d 1043, 1046 (9th Cir. 2009); *Carpenters Health & Welfare Trust Fund v. Bla-Delco Constr., Inc.*, 8 F.3d 1365, 1367 (9th Cir. 1993); *Rathgeb v. Air Cal, Inc.,* 812 F.2d 567, 570 (9th Cir. 1987); *Northern Cal. Dist. Council of Laborers v. Pittsburg–Des Moines Steel Co.,* 69 F.3d 1034, 1036 (9th Cir. 1995). This issue is addressed in the Argument section of Local 226's reply brief.

**Plaintiff's Disputed Fact No. 4**

Article 23.01 of the Collective Bargaining Agreement acknowledges an employer's right to manage its business and employees (subject to the CBA). Nonetheless, it mandates that an employer oblige or consider the CBA's provisions on seniority in so doing. Moreover, this right may not otherwise conflict with the terms and conditions of the CBA. It appears that it had no duty to consider seniority. A question of fact remains as to whether or not Monte Carlo made its decision not to honor

Plaintiff's seniority request based on a fundamental and flagrant misunderstanding of the CBA.  Exh. 1 Nigrelli Dep. 25:24-26-5; Union MSJ Dyer Aff., ¶ 3 and Union Exh. A., at 61; Nigrelli Aff.

**Local 226's Response to Disputed Fact No. 4**

There is no dispute about what Article 23.01 says.  Nigrelli does not cite any evidence to support of its assertion that Monte Carlo believed that it had no duty to consider seniority when it make the new schedule.  The only evidence that Nigrelli cites is the Collective Bargaining Agreement and "Nigrelli Aff."  In support of its motion for summary judgment, Local 226 provided deposition testimony from Monte Carlo's manager (Nicholas Kabetso) about how he considered seniority when making the new schedule.  Local 226's SUF, ¶ 31.

**Plaintiff's Disputed Fact No. 5**

Related to Item 4 above, it appears that Monte Carlo employed a random/blind methodology in determining whose schedule or shift would be modified.  They covered up employee names and randomly chose.  A question of fact remains as to whether or not this is so and whether or not a random based decision-based strategy satisfies the mandate of seniority considerations.  Nigrelli Aff.

**Local 226's Response to Disputed Fact No. 5**

Nigrelli does not cite any admissible evidence to support this factual assertion about how Monte Carlo made the new schedule.

**Plaintiff's Disputed Fact No. 6**

Defendants claim that the two-hour rule dictates, and trumps any provision in the CBA.  Indeed it appears that both the Monte Carlo and Plaintiff's Union Representative actually believed at the time they made their decision that this rule-of-thumb was a term in the CBA.  A question of fact remains as to what effect this mistaken belief had on Union's decision not to arbitrate.  Union MSJ Exh. M Kabetso Dep. 21:23-22:24, 37:21-23, 38:16-39:16:1; Union MSJ Dalton Aff., ¶ 11; Nigrelli Aff.

4

**Local 226's Response to Disputed Fact No. 6**

Local 226 agrees that the "two-hour rule" does not appear in the Collective Bargaining Agreement's text.

Nigrelli cites paragraph 11 of Dalton's Affidavit to support its assertion that Dalton believed the two-hour rule is contained in the Collective Bargaining Agreement. Dalton does not state in any paragraph of her affidavit that the two-hour rule is written in the Collective Bargaining Agreement. She states, at paragraph 4, "Since at least as long as I have been a member of Local 226, Local 226 has followed the 'two-hour rule.'" In any event, such a mistake would be immaterial to whether summary judgment should be granted.

There is no evidence that Kabetso's "mistaken belief" that the two-hour rule appears in the Collective Bargaining Agreement's text had any effect on Local 226's decision not to arbitrate Nigrelli's grievance.

It is undisputed that the "two-hour rule" is an established practice which Local 226 and Monte Carlo. Local 226 SUF, ¶ 8. Local 226's decision not to arbitrate was made based on advice from Local 226's counsel (Richard McCracken). Local 226's SUF, ¶¶ 46-48. The basis for McCracken's advice is set out in paragraphs 5 to 8 of his declaration. Nigrelli does not offer any contrary evidence.

**Plaintiff's Disputed Fact No. 7**

Both Union and Monte Carlo claim that Monte Carlo is allowed to adjust schedules under the two-hour rule without regard to seniority. Both apparently believed it a written term in the CBA. Both are wrong. Plaintiff believes the seniority provisions of the CBA should have prevailed. A question of fact remains as to whether or not Monte Carlo or Union based their respective decisions on the erroneous belief that seniority considerations are immaterial. Nigrelli Aff.

**Local 226's Response to Disputed Fact No. 7**

Whether the "two-hour rule" violates the Collective Bargaining Agreement is a question of law, not a question of fact.  Nigrelli does not provide any evidence to support her assertion that Monte Carlo and Local 226 believed that "seniority considerations are immaterial."

**Plaintiff's Disputed Fact No. 8**

With respect to Item 6 above a secondary question of fact remains as to whether or not both Union and Monte Carlo adequately contemplated (or for that matter considered at all) seniority considerations given the dictate of the CBA and industry practice.  Nigrelli Aff.

**Local 226's Response to Disputed Fact No. 8**

Nigrelli does not provide any evidence to support her assertion that Local 226 and Monte Carlo failed to adequately consider seniority.

**Plaintiff's Disputed Fact No. 9**

The union's duty of fair representation extends to its conduct in negotiating collective bargaining agreements as well as in pursuing grievances on behalf of individual employees.  In this regard, if this so called two hour has actually been in effect for decades, Plaintiff submits that Union had a duty to incorporate it into the collective bargaining agreement so as to give fair notice to its members of those issues or rules affecting seniority principles.  A question of fact (and law) remains as to whether or not, as a result, Union breached a duty by failing to incorporate said rule of thumb into the CBA subsequent to negotiating same on behalf of its members.  The same is so for the alleged 60% rule.  *Bautista v. Pan American World Airlines, Inc.* 828 F.2d 546, 549 (9th Cir. 1987).  Nigrelli Aff.

**Local 226's Response to Disputed Fact No. 9**

This assertion – that Local 226 may have breached its duty of fair representation by failing to incorporate the two-hour rule in the Collective Bargaining Agreement's text – does not create a dispute

of fact. Whether the federal duty of fair representation requires that established practices be reduced to writing is a pure issue of law, which Local 226 addresses in the Argument section of its reply brief.

### Plaintiff's Disputed Fact No. 10

In April, Samson Edea was employed as an organizer by Local 226. An as of yet unidentified individual sent an email including an attachment of a video to Edea. That video was a promotional video on YouTube that appeared to include Nigrelli's husband in scenes suggesting he was a customer of Station Casinos. Union MSJ Edea Aff. , ¶ 4. On about April 8, Edea, along with Leo Batres, met with Nigrelli in the Monte Carlo's employee cafeteria. Edea and Batres and confronted Nigrelli about her husband's patronage of Station Casinos. FAC, ¶¶ 48, 50-54; Nigrelli Dep. 162:13-163:116; Union MSJ Edea Aff., ¶ 5. They also opted to say to Plaintiff: "Well, you know that your husband gets his health benefits from us." FAC, 48, 50-54; Exh. 1 Nigrelli Dep. 162:13-163:116. Nigrelli asked if they were threatening her. Edea and Batres said that they were not and that they would never threaten her. Edea and Batres then mentioned the promotional video involving Nigrelli's husband. FAC, ¶¶ 162:13-163:116; Edea, ¶ 5. In discovery, Union apparently concealed the identity of the sender of the email to Edea containing the video. The motive for this apparent intimidation tactic and its relation to Plaintiff's claims is unclear especially given, that Union has not identified the sender. It remains a material fact in dispute. Nigrelli Aff.

### Local 226's Response to Disputed Fact No. 10

The facts that Nigrelli recites in this paragraph regarding her conversation with Edea and Batres are not in dispute. *See* Local 226 SUF, ¶¶ 49-55. Nigrelli's assertion that Local 226 "apparently concealed" who sent an email to Edea containing a video of Nigrelli's husband is unfounded. Nigrelli could have conducted discovery on this issue and moved to compel if it suspected that Local 226 was concealing evidence. In any event, the video, and Edea's conversation with Nigrelli about it, is a

decoy. Neither Edea nor Batres participated in the decision not to submit Nigrelli's grievance to arbitration; and the people who made that decision were not aware of the video. Local 226's SUF, ¶¶ 56-57.

Dated: July 26, 2016            McCRACKEN, STEMERMAN & HOLSBERRY

*/s/ Kristin L. Martin*
Kristin L. Martin

*Attorneys for Defendant Culinary Workers Union Local 226*

## CERTIFICATE OF SERVICE

I am employed in the city and county of San Francisco, State of California. I am over the age of eighteen years and not a party to the within action; my business address is: McCRACKEN, STEMERMAN & HOLSBERRY, 595 Market Street, Suite 800, San Francisco, California 94105.

On this 26th day of July, 2016, I caused to be served a true and correct copy of the above and foregoing:

- **Local 226's Responses to Concise Summary of Disputed Facts**

via ECF filing, properly addressed to the following:

Frederick A. Santacroce
SANTACROCE LAW OFFICES, LTD.
3275 S. Jones Blvd. Ste. 104
Las Vegas, Nevada 89146
fasatty@yahoo.com

*Attorneys for Plaintiff Nigrelli*

Paul T. Trimmer
JACKSON LEWIS P.C.
3800 Howard Hughes Pkwy., Ste. 600
Las Vegas, NV 89169
trimmerp@jacksonlewis.com

*Attorneys for Defendants Victoria Partners d/b/a Monte Carlo Resort and Casino Resort and Casino*

Antony M. Santos
A.M. SANTOS LAW, CHTD.
3275 S. Jones Blvd. Ste 104
Las Vega, Nevada 89146

*Attorneys for Plaintiff Nigrelli*

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on this 26th day of July, 2016 at San Francisco, California.

　　　　　　　　　　　　　　　　　　　　　　　　_/s/ Suzanne Scanlon_____
　　　　　　　　　　　　　　　　　　　　　　　　Suzanne Scanlon